STATE of Tennessee, Appellee,

v.

**Barry WOODCOCK, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 15, 1995.

David L. Raybin, Hollins, Wagster & Yarbrough, P.C., Nashville, for Appellant, on Appeal.

Proctor Upchurch and Randall A. York, Upchurch, Colvard & York, Crossville, for Appellant, at trial.

Charles W. Burson, Attorney General and Reporter, Ellen H. Pollack, Asst. Attorney General, Nashville, William E. Gibson, District Attorney General, Ben Fann and Lillie Ann Sells, Asst. District Attorneys General, Cookeville, for Appellee.

## *OPINION*

PEAY, Judge.

The defendant was charged in the indictment with two counts of rape and three counts of incest. On October 15, 1993, a jury found him guilty on all counts and authorized fines in the amount of twenty-five thousand dollars ($25,000) for one count of rape and ten thousand dollars ($10,000) each for two counts of incest. At the sentencing hearing on December 20, 1993, the trial court sentenced the defendant to eight years on one count of rape, ten years on the other count of rape, four years on one count of incest, and five years each on the other two counts of incest. The trial court ordered the eight year rape sentence and the four year incest sentence to be served concurrently. In addition, the trial court ordered the ten year rape sentence and both five year incest sentences to be served concurrently with each other,

but consecutive to the other two counts. The effective term of imprisonment was eighteen years in the Department of Correction. The trial court also imposed the maximum fine authorized by the jury, forty-five thousand dollars ($45,000).

In this appeal as of right, the defendant raises the following four issues[1] for this Court to consider:

1. the trial court erred in allowing the prosecution to present evidence of uncharged sexual misconduct unrelated to the counts in the indictment in its case-in-chief;

2. the trial court erred in failing to instruct the jury on lesser included offenses;

3. the trial court erred in imposing consecutive sentences; and,

4. the trial court erred in imposing fines totalling forty-five thousand dollars ($45,000).

We find that the defendant's first issue has merit, and his convictions are therefore reversed. In the interest of complete appellate review, we will also address the three remaining issues. We find that the defendant's third and fourth issues are without merit. The second issue, however, does have merit and would also require a new trial as to count five of the indictment.

After some counts were dismissed, the revised indictment charged the defendant with five crimes which had allegedly occurred on four separate days. Count one alleged that the defendant committed incest with the victim, his step-daughter,[2] on or about September 7, 1988. Count two alleged that he raped the victim on or about November 14, 1988. Count three alleged that he again raped the victim on or about the Wednesday before Thanksgiving of 1989. Count four alleged

---

1. Although the defendant's brief frames five issues, the first and second issues actually comprise one distinct issue. As a result, we have merged his first and second issues and will address the four issues as they are numbered in this opinion.

2. Throughout this opinion we will often refer to the defendant's step-daughter as "the victim." Because she was a minor when some of the offenses allegedly occurred, it is the policy of this Court not to identify her by name.

that the defendant committed incest with the victim on or about the same date as count three, the Wednesday before Thanksgiving, 1989. Count five alleged that he committed incest with the victim on or about January 3, 1992.

On the first day of the trial, October 12, 1993, the trial court conducted a jury-out hearing on the defendant's motion to prohibit the State from introducing evidence of uncharged sexual misconduct. The defendant's trial counsel argued that evidence of prior "bad acts" should be excluded under Tennessee Rule of Evidence 404(b),[3] which generally prohibits the introduction of character evidence aimed at establishing a defendant's propensity to commit a crime. *See* Tenn. R.Evid. 404(b). The State contended that it was offering evidence of prior sexual misconduct not to prove the character of the defendant but, rather, primarily to corroborate the testimony of the victim concerning the incidents alleged in the indictment as well as to show the state of intimacy between the defendant and the victim, to explain the circumstances surrounding the charged offenses and to show the conduct of the defendant toward the victim. Accordingly, the State argued that the evidence of the defendant's prior sexual misconduct was admissible under those limited circumstances.

In support of its argument, the State cited several cases including *State v. Lockhart*, 731 S.W.2d 548 (Tenn.Crim.App.1986) (holding that evidence of incest with the same victim prior to or after the offense charged is admissible to corroborate proof of the incident relied upon for conviction), *overruled by State v. Rickman*, 876 S.W.2d 824 (Tenn. 1994); *Martin v. State*, 584 S.W.2d 830

(Tenn.Crim.App.1979) (holding that evidence of uncharged incest with the same victim is admissible to illustrate the relationship existing between the defendant and the victim), *overruled by State v. Rickman*, 876 S.W.2d 824 (Tenn.1994); *State v. Paul Carrier*, C.C.A. No. 03C01–9107–CR–00199, 1992 WL 186544 Sullivan County (Tenn.Crim.App. filed August 6, 1992, at Knoxville) (holding that uncharged sexual acts committed upon the same victim are admissible to show the conduct of the defendant toward the victim and to corroborate the evidence of the offense charged in the indictment); and *State v. James R. Blevins*, C.C.A. No. 250, 1989 WL 100223 Washington County (Tenn.Crim. App. filed August 31, 1989, at Knoxville) (holding that prior, uncharged sexual conduct between the defendant and the victim is admissible to show their state of intimacy as well as to explain the circumstances surrounding the offense).

After hearing argument from both the State and the defense, the trial court mentioned to both parties the opinion of this Court in the case of *State v. John Rickman*, C.C.A. No. 03C01–9211–CR–00393, 1993 WL 171706 Bradley County (Tenn.Crim.App. filed May 18, 1993, at Knoxville) (holding that evidence of prior uncharged sexual conduct with the victim is admissible to corroborate the victim's testimony), which was subsequently overruled by our Supreme Court in *State v. Rickman*, 876 S.W.2d 824 (Tenn. 1994). The trial court found the Court of Criminal Appeals opinion in *Rickman* particularly helpful and commented as follows:

> But most of the cases you [the State] cited predate the rules of evidence and predate Rule 404(b). So the *Rickman* case here

---

3. Tennessee Rule of Evidence 404(b) reads as follows:

> (b) Other Crimes, Wrongs, or Acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
> (1) The court upon request must hold a hearing outside the jury's presence;

> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.
> Tenn.R.Evid. 404(b).

analyzes all of those cases and then analyzes the impact of passage of Rule 404(b) and then came to the conclusion. And it reviewed *Lockhart* and it reviewed *Burchfield* and *Bunch* and all these other cases. That the apparent aim of the testimony is to help establish the credibility of the victim and that Rule 404(b) does not preclude the testimony if its use is limited to reasons other than substantive evidence of the crime. It is our view that this special crimes exception applicable only to prior acts with the same victim has survived enactment of the new rules but is limited much like fresh complaint to corroboration of the victim's testimony.

Having concluded that evidence of uncharged sexual misconduct was admissible in certain circumstances, the trial court held that it would need to rule on the admissibility of specific testimony and exhibits in the context in which the evidence was offered during trial. The trial court did, however, offer the following guidance for the parties:

The State's going to have to present their proof [of uncharged sexual misconduct] in such a way that it does corroborate. You're going to have to come in and present the facts as you've alleged and then you might be able to introduce this other stuff to corroborate it. But I don't think you can start from day one and come forward. You may have to backtrack it seems to me.

With the resolution of this issue and a number of other pre-trial motions, the State began its case-in-chief.

The State's first witness was the victim. After initial testimony on foundational matters, but before any testimony regarding the counts in the indictment, the victim related the first incident of uncharged sexual misconduct. She testified that the defendant had physically placed her hands on his penis and had forced her to masturbate him. On the same occasion, the defendant attempted to persuade the victim to perform oral sex on him. The victim testified further that she had been thirteen years old at the time of

this incident and that this type of activity had recurred often until September 1988, at which time she was fifteen years old. She then testified that on or about September 7, 1988, the defendant had forcibly penetrated her both vaginally and anally, as alleged in count one of the indictment.

From this point in her testimony to the conclusion of her direct examination by the State, the victim alternated between recounting episodes of uncharged sexual misconduct and relating the incidents which form the basis of the counts in the indictment. We feel compelled to describe some examples of the testimony concerning uncharged sexual misconduct in order to illustrate the significance such evidence had in the State's case-in-chief.

The victim testified that on many occasions she had accompanied the defendant during car trips from Cookeville to visit his daughter in Nashville. According to the victim's testimony, the defendant often stopped at a convenience store along the route to purchase pornographic magazines. He then allegedly showed the magazines to her, demanded that she remove her pants and underwear, and made her masturbate as they drove along the interstate. While this occurred, the defendant supposedly slowed the car beside tractor-trailers, turned on the light inside the car, and sounded the horn to attract the truck drivers' attention. During these incidents, he also allegedly voiced fantasies to the victim in which she was raped by truck drivers. The victim testified further that on the trip back to their home in Cookeville she had often accompanied the defendant to his business office. Once there, the defendant allegedly showed her a pornographic videotape and forced her to have intercourse with him on a rug in his office. None of this testimony, however, is connected to any of the charges in the indictment.

In addition, the victim testified that the defendant had come home one day carrying a brown paper bag. The defendant allegedly opened the bag, showed the victim two vibrators, and said he intended to use them

simultaneously on her. She testified further that he had not in fact used them on her and that she had not seen them again after the initial incident. This testimony is also not connected to any of the charges in the indictment.

The most dramatic use of uncharged sexual conduct in the State's case-in-chief came at the close of the direct examination of the victim. She testified that on one occasion the defendant had told her that there was a surprise waiting for her in her bedroom. Once she had gone to her bedroom, he forced her onto her bed and tied her arms and legs to the bed with twine. He then allegedly produced a peeled cucumber which he inserted into her vagina. The victim testified further that during the incident, the defendant had told her "that it would make the scene much better if he had a ski mask on." Immediately after the incident, he supposedly said "I had fun, did you?" Again, none of this testimony is connected to any of the charges in the indictment.

The State, however, presented even more evidence on the incidents of uncharged sexual misconduct in its case-in-chief. During the investigation of the charged offenses, law enforcement officers searched the defendant's business office and seized several items. At trial, the State introduced some of those items, including two pornographic magazines and a semen-stained rug. The State presented a serology expert who testified that there were approximately forty semen stains on the rug and that the semen was consistent with the defendant's blood type. In addition, the State offered testimony from the law enforcement agent who had conducted the search of the office. The agent testified concerning the seizure of the pornographic magazines and the rug, and also stated that they had found two vibrators in a file cabinet. Neither the testimony about the items seized during the search nor the exhibits themselves are connected to any of the offenses charged in the indictment.

Even in closing argument, the State focused repeatedly on the uncharged sexual misconduct. At one point during closing, the State commented as follows:

> She [the victim] told you how he [the defendant] put her head to his penis and pulled her hair, yanked her hair every time she tried to turn her head. She was crying. Don't cry too loud; your mama will hear. Thirteen years old. No, you won't see that in the indictment. He's not charged with that. That happened too long ago.

Moreover, the State made innumerable references to the incidents of masturbation, the incident involving the cucumber, the magazines, the rug and the vibrators. The following passage demonstrates how heavily the State relied upon evidence of uncharged sexual misconduct in its closing argument:

> They [defense counsel] said we didn't bring any rebuttal witnesses in. You don't bring witnesses in unless you have them. There were three people there that saw most of this, and that was Barry [the defendant] and Sandra [the defendant's wife at the time of the alleged offenses] and her daughter, [the victim]. They've all testified. Now who are we going to bring in? We don't go out and get some stranger. They didn't see anything that happened here. They haven't listened to anything that happened here.

> But the statement that there were only three witnesses of course isn't really true. O'Rear [the agent who conducted the search of the defendant's office] testified and the lab man testified. They've told you about that rug out there with 40 spots of semen on it in that man's office. They've told you about those magazines and the dildoes. We'll get into those more later. But those things are witnesses also.

It is apparent from the discussion above that the evidence of uncharged sexual misconduct played a significant role in the State's case against the defendant.

 In his first issue, the defendant challenges the trial court's admission of evidence regarding sexual misconduct unrelated

to the counts in the indictment in the State's case-in-chief. The defendant argues that the authorities on which the State and the trial court relied to admit such evidence were expressly overruled by our Supreme Court's decision in *State v. Rickman*, 876 S.W.2d 824 (Tenn.1994). In *Rickman*, the defendant was indicted for and convicted of statutory rape and incest. At trial, the court allowed the victim to testify concerning prior sexual incidents unrelated to the offenses alleged in the indictment on the grounds that the testimony was offered for purposes of corroboration. *Rickman*, 876 S.W.2d at 826. Our Supreme Court reversed the convictions, holding that there is no "sex crimes" exception to the general rule prohibiting evidence of other crimes, wrongs or acts in a criminal prosecution. *Rickman*, 876 S.W.2d at 825. Furthermore, the Supreme Court specifically rejected the notion that testimony about uncharged sexual misconduct unrelated to the charges in the indictment is admissible for purposes of corroborating the victim's testimony regarding the charged offenses.

> Testimony of the *victim* about *other* prior unindicted sex crimes allegedly committed by the defendant upon the victim does not corroborate the testimony of the victim that he or she suffered the attack for which the defendant is *then* being tried. Moreover, the prejudice resulting from such testimony outweighs its probative value.

*Rickman*, 876 S.W.2d at 830 (emphasis in original). In so holding, our Supreme Court overruled a number of cases which had allowed evidence of uncharged sexual misconduct to be admitted at trial for purposes of corroboration or illustration of the relationship between the defendant and the victim.

Three decisions of the Court of Criminal Appeals relied upon by the State in this appeal—*State v. Lockhart*, 731 S.W.2d 548 (Tenn.Crim.App.1986); *Martin v. State*, 584 S.W.2d 830 (Tenn.Crim.App.1979); and *Sanderson v. State*, 548 S.W.2d 337 (Tenn.Crim.App.1976)—appear to hold that evidence of prior uncharged sex crimes is admissible. To the extent that those decisions, or any other decisions of this Court or the Court of Criminal Appeals, conflict with the holding herein, they are overruled.

*Rickman*, 876 S.W.2d at 829, n. 6. The Supreme Court's opinion in *Rickman* leaves no doubt that evidence of a defendant's sexual misconduct not charged in the indictment and not connected to any of the charges in the indictment is inadmissible during the State's case-in-chief under Tennessee Rule of Evidence 404(b).[4] *Rickman*, 876 S.W.2d at 825.

In the present case the trial court, relying directly upon authority which was subsequently overruled by the Supreme Court's holding in *Rickman*, admitted testimony concerning uncharged sexual misconduct. In light of our Supreme Court's decision in *Rickman*, the State now concedes that it was error to introduce evidence of uncharged sexual misconduct unrelated to any of the charges in the indictment in its case-in-chief. The State, however, argues that the introduction of such evidence in this case was harmless error under Tennessee Rule of Appellate Procedure 36(b) because there is no showing that the error more probably than not affected the judgment. *See* T.R.A.P. 36(b); Tenn. R.Crim.P. 52(a).

We begin our inquiry into whether the error is harmless by noting that the trial court frequently gave limiting instructions to the jury when the State introduced evidence

---

4. *Rickman* does, however, reaffirm a narrow exception which admits evidence of other sex crimes when an indictment is not time specific and when the evidence relates to sex crimes that allegedly occurred during the time period charged in the indictment. *See Rickman*, 876 S.W.2d at 829. The policy underlying this limited exception is to allow some latitude in the prosecution of crimes committed against young children who frequently cannot remember the exact date on which an offense was committed. *See Rickman*, 876 S.W.2d at 828. Yet in order to preserve the defendant's right to a unanimous jury verdict, the State must elect at the close of its case-in-chief the incident for which a conviction is being sought. *See Rickman*, 876 S.W.2d at 828–829.

of uncharged sexual misconduct. The trial court instructed the jury that evidence of uncharged crimes could not be taken as substantive proof of the counts in the indictment, but rather only as corroboration of the victim's testimony regarding the charged offenses. Although a prompt jury instruction not to consider improper evidence generally cures any error, the instruction must express the correct state of the law in order to be effective. *See State v. Dutton*, 896 S.W.2d 114, 116–117 (Tenn.1995). The trial court's instructions in this case were incorrect because, in light of *Rickman*, evidence of uncharged sexual misconduct is not admissible to corroborate the victim's testimony regarding charged offenses. *See Rickman*, 876 S.W.2d at 830. Thus, the trial court's limiting instructions were not effective in curing the error of admitting evidence of uncharged sexual misconduct. As a result, we must now consider whether, from the record as a whole, the error in this case more probably than not affected the judgment.

■ Our previous review of some of the examples of testimony concerning uncharged sexual misconduct reveals that the evidence of the defendant's "prior bad acts" introduced at trial was shocking to say the least. In fact, the State referred to the evidence of uncharged sexual misconduct so ostentatiously and so frequently that it overwhelmed the victim's succinct, matter-of-fact testimony about the incidents which form the basis for the counts in the indictment. Furthermore, our review of the record indicates that the State's direct examination of witnesses in the presence of the jury during its case-in-chief occupies approximately one hundred two pages of the trial transcript. Of those one hundred two pages, roughly forty-two pages involve testimony concerning uncharged sexual misconduct. Based on the nature of the evidence offered and the manner in which it was offered, it appears to this Court that the State introduced evidence of uncharged sexual misconduct to suggest propensity rather than to comport with a recognized exception to Rule 404(b). From our review of the

entire record, we can only conclude that the admission of evidence of uncharged sexual misconduct unrelated to any of the counts in the indictment was highly prejudicial and more probably than not did affect the judgment in this case. Thus, the trial court's error in admitting such evidence was not harmless. *See* T.R.A.P. 36(b); Tenn. R.Crim.P. 52(a). We therefore find the defendant's first issue to be meritorious, requiring a reversal of his convictions and a remand for a new trial.

In the interest of providing both complete judicial review and guidance to the trial court on remand, we will address the defendant's three remaining issues even though our finding that the defendant's first issue has merit is dispositive in this case.

In his second issue, the defendant challenges the trial court's failure to charge statutory rape as a lesser included offense of rape and attempted incest as a lesser included offense of incest. The State contends, however, that this issue is waived because it was not included in the defendant's motion for a new trial. *See* T.R.A.P. 3(e). Initially, we note that our disposition of this case on the issue of uncharged sexual misconduct effectively eliminates the issue of waiver which the State raises. We will, therefore, address the merits of the defendant's second issue.

The defendant first argues that it was error for the trial court not to charge the jury on statutory rape as a lesser included offense of rape. He contends that the jury could have believed that the sex acts which had occurred between him and the victim had been consensual, thereby meriting a conviction for statutory rape rather than rape. In support of his contention, the defendant cites the case of *State v. Jones*, 889 S.W.2d 225 (Tenn.Crim.App.1994). As the State points out, however, *Jones* involved the issue of whether statutory rape is a lesser included offense of aggravated rape. *See Jones*, 889 S.W.2d at 230. Under Tennessee law at the time of *Jones*, the offense of aggravated rape existed for the rape of a victim less than

thirteen years of age.[5] *See* T.C.A. § 39–13–502(a)(4) (1991). Because the defendant in *Jones* asserted a mistake of fact defense with regard to the victim's age and both aggravated rape and statutory rape contain age elements, this Court concluded. that statutory rape qualified as a lesser included offense of aggravated rape under the particular circumstances of that case. *Jones,* 889 S.W.2d at 229–230.

 In the present case, the defendant was charged with rape rather than aggravated rape. The elements of rape, as alleged in this case, are sexual penetration of the victim by the defendant and the use of force or coercion to accomplish the penetration. *See* T.C.A. § 39–13–503(a)(1) (1991); T.C.A. § 39–2–604(a)(1) (1982). The elements of statutory rape are sexual penetration of a victim who is at least thirteen years of age but less than eighteen years of age, and the defendant is at least four years older than the victim under Tennessee law applicable to the 1989 incident or at least two years older than the victim under Tennessee law applicable to the 1988 incident. *See* T.C.A. § 39–13–506(a) (1991); T.C.A. § 39–2–605(a) (1982). "[A]n offense is necessarily included in another if the elements of the greater offense, as those elements are set forth in the indictment, include, but are not congruent with, all the elements of the lesser." *Howard v. State,* 578 S.W.2d 83, 85 (Tenn.1979). It is clear that the offense of statutory rape includes an age element whereas the offense of rape does not, and the offense of rape includes the element of force whereas the offense of statutory rape does not. Thus, statutory rape is not a lesser included offense of rape in the case at bar. It was therefore proper for the trial court not to charge the jury on statutory rape.

The defendant next argues that it was error for the trial court not to instruct the jury on attempted incest as a lesser included offense of incest. He contends that there was evidence presented at trial to support an

instruction on attempted incest with regard to count five of the revised indictment, charging him with committing incest on or about January 3, 1992. Specifically, the defendant testified that on that particular occasion he and the victim had planned the previous night to have consensual sex that morning. After the victim's mother had left the home for a business meeting, the defendant joined the victim in her bedroom and removed his clothes intending to engage in sexual intercourse. The victim's mother, however, returned early and interrupted the defendant. She testified that she had seen the defendant, naked, lying on top of the victim, who was also naked. The defendant testified, however, that he had been unable to achieve an erection that morning and, hence, there had been no penetration of the victim. The victim's mother testified that she had observed the defendant's penis on that occasion, but she was unable to remember whether the defendant had an erection. She testified further that the victim had told her that "nothing had happened" shortly after the incident. At trial, however, the victim testified that the defendant had indeed penetrated her on that occasion.

 Although the defendant did not request an instruction on attempted incest at trial, it is clear in Tennessee he does not have to do so. *See* T.C.A. § 40–18–110(a) (1990). In fact, "where there are any facts that are susceptible of inferring guilt of any lesser included offense or offenses, then there is a mandatory duty upon the trial judge to charge on such offense or offenses." *State v. Wright,* 618 S.W.2d 310, 315 (Tenn. Crim.App. 1981). The State now concedes that there was evidence presented at trial to support a charge of attempted incest. Yet the State contends that the failure to charge attempted incest amounted to no more than harmless error. *See* T.R.A.P. 36(b). We, however, are not persuaded by the State's contention. In *State v. Vance,* this Court stated that:

the Trial Judge's omission to charge the jury the law as to such lesser included

---

5. Current Tennessee law has eliminated this category of aggravated rape and replaced it with a

separate offense, rape of a child. *See* T.C.A. § 39–13–522 (Supp.1994).

offenses is reversible error, unless there is *no* evidence as to such offenses *and* unless it is *absolutely certain* that defendant could not be prejudiced by such omission. *State v. Vance,* 888 S.W.2d 776, 780 (Tenn. Crim.App.1994) (citing *Frazier v. State,* 117 Tenn. 430, 441, 100 S.W. 94, 97 (Tenn.1907)) (emphasis added). From our review of the record in this case, we cannot conclude that there is no evidence as to the offense of attempted incest, nor are we certain that the defendant was not prejudiced by the omission of such a charge. As a result, it was reversible error for the trial court not to charge attempted incest as a lesser included offense for count five of the revised indictment.

In his third issue, the defendant challenges the trial court's imposition of consecutive sentences totalling eighteen years imprisonment. The record reflects that the trial court sentenced the defendant to four years on count one (incest), eight years on count two (rape), ten years on count three (rape), five years on count four (incest), and five years on count five (incest). The trial court ordered counts one and two to run concurrently. The trial court ordered further that counts three, four and five run concurrently with each other, but consecutive to counts one and two. The effective sentence was eighteen years. The defendant does not challenge the length of any individual sentence. Instead, he contends that consecutive sentences totalling eighteen years are excessive in light of testimony at the sentencing hearing that he "is not likely to pose a threat to the community in the sense that he might pick a child up off the street and harm them."

■■■■ When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. T.C.A. § 40–35–401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40–35–401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record

that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991).

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40–35–210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

(1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40–35–113 and 40–35–114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40–35–210.

■■■■ In the present case, the trial court imposed consecutive sentences under T.C.A. § 40–35–115(b)(5), which reads as follows:

(b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

From our review of the testimony at both the trial and the sentencing hearing, it is clear that the defendant qualifies for consecutive sentencing under T.C.A. § 40–35–115(b)(5). The defendant himself testified at trial that he had carried on a secret sexual relationship with his step-daughter for a period of approximately four years. Even according to

the defendant's testimony, the relationship progressed from early instances of masturbation and oral sex to full sexual intercourse by the time the victim was fifteen years old. Moreover, at the sentencing hearing, a psychologist who had seen the victim in roughly twenty counseling sessions testified that the victim would most likely face continuing mental and emotional difficulties as a result of the defendant's offenses. Having conducted a *de novo* review on the record, we find that the trial court correctly applied T.C.A. § 40–35–115(b)(5).

Finding that it was proper to apply T.C.A. § 40–35–115(b)(5) does not, however, end our inquiry into the validity of consecutive sentencing. Instead, T.C.A. § 40–35–115 requires further review of whether consecutive sentences are necessary to protect the public from the defendant's possible future criminal conduct and whether the aggregate sentence is reasonably related to the severity of the defendant's present offenses. T.C.A. § 40–35–115 Sentencing Commission Comments. The Sentencing Commission Comments to T.C.A. § 40–35–115 indicate that the multiple convictions statute is essentially a codification of two cases, *Gray v. State*, 538 S.W.2d 391 (Tenn.1976), and *State v. Taylor*, 739 S.W.2d 227 (Tenn.1987). *Taylor* is particularly significant with regard to the case at bar because it was the impetus for the creation of T.C.A. § 40–35–115(b)(5). In *Taylor*, our Supreme Court stated that consecutive sentences should not be imposed routinely and that the aggregate sentence "must be reasonably related to the severity of the offenses involved." *Taylor*, 739 S.W.2d at 230. *Taylor* also indicated that courts should bear in mind the general objectives set forth in *Gray* when imposing consecutive sentences. *Taylor*, 739 S.W.2d at 230. In *Gray*, our Supreme Court stated that "a consecutive sentence should be imposed only after a finding by the trial judge that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant." *Gray*, 538 S.W.2d at 393.

▮ The defendant contends that consecutive sentences are improper in his case be- cause multiple psychologists testified at the sentencing hearing that he did not pose a threat to society in general. In addition, he points to language of the trial court during a hearing on his motion for reduction of sentence which reflects acceptance of the psychologists' opinions.

> I felt like at the time [of the sentencing hearing] that the sentences should be run consecutive because we have perpetration of crimes over a long period of time upon a vulnerable person. I don't think the defendant is a threat to society in general, but that was the feeling of the Court at the time that it should be consecutive.

Moreover, the defendant cites two cases, *State v. Henry*, 834 S.W.2d 273 (Tenn.1992), and *State v. Hayes*, 899 S.W.2d 175 (Tenn. Crim.App.1995), which held consecutive sentences inappropriate. He argues that the circumstances of his case are substantially similar to those in *Henry* and *Hayes*.

The defendant's case, however, is markedly different from both *Henry* and *Hayes*. In *Henry*, the defendant was convicted of two counts each of aggravated rape and incest of his granddaughter. In his initial sentencing hearing, the trial court sentenced the defendant to forty years on each rape and five years on each incest, and all sentences were to run concurrently. This sentencing hearing was flawed though, and the defendant received a new sentencing hearing. Before the second hearing, the defendant and the State entered into an agreement whereby the defendant would receive twenty years on each rape and five years on each incest. The trial court approved the agreement but imposed consecutive sentences resulting in an effective sentence of forty years. *Henry*, 834 S.W.2d at 274. Upon appeal, this Court reversed the imposition of consecutive sentences, concluding that a twenty year sentence effectively protected the public from further criminal conduct by the defendant. *State v. Edward Frank Henry*, C.C.A. No. 01C01–9003–CC–00050, 1990 WL 183756 Cheatham County (Tenn.Crim.App. filed November 29, 1990, at Nashville). The key element in the reversal, however, was the

age of the defendant. "Since he is past 65 years of age now he will pose no threat to society when he reaches parole eligibility even under an effective sentence of 20 years. In our opinion concurrent, not consecutive, sentencing is proper." *State v. Edward Frank Henry*, C.C.A. No. 01C01–9003–CC–00050, 1990 WL 183756 Cheatham County (Tenn.Crim.App. filed November 29, 1990, at Nashville). Obviously, the defendant in the case at bar, who is currently forty-nine years old, and the defendant in *Henry* are not similarly situated. Furthermore, it is worth noting that the defendant in *Henry* received an effective sentence of twenty years, whereas the defendant in the present case received an effective sentence of eighteen years.

Likewise, *Hayes* is clearly distinguishable from the case at bar. In *Hayes*, the defendant was convicted of two counts of aggravated sexual battery. The proof at trial showed that the defendant had rubbed the victim's back and the side of her breast on the two occasions alleged in the indictment. The trial court sentenced the defendant to twelve years on each count and ordered that the sentences be served consecutively. *Hayes*, 899 S.W.2d at 178. On appeal, this Court modified the defendant's sentences to eleven years each and, finding T.C.A. § 40–35–115(b)(5) inapplicable, ordered that they be served concurrently.

> The state stresses the fact that the victim was the defendant's daughter. However, the circumstances in this case relating to the remaining factors to be considered militate against the use of subsection 115(b)(5). There was no significant time span of undetected sexual activity, the nature of the criminal conduct was nonaggravated, and the extent of residual damage to the victim caused by the conduct is not sufficiently shown.

*Hayes*, 899 S.W.2d at 187. In the present case, however, the defendant was convicted of two counts of rape and three counts of incest. The time span of undetected sexual activity was certainly significant, the nature and scope of the sexual activity were extensive, and the residual damage to the victim

was serious. Clearly, *Hayes* and the case at bar are quite dissimilar with respect to the applicability of T.C.A. § 40–35–115(b)(5).

Furthermore, the defendant's reliance on the testimony at the sentencing hearing that he is not a threat to society in general is somewhat misplaced. The defendant was not convicted of sexually assaulting a random child from the public at large. Instead, the proof at trial showed that he had gradually established a sexual relationship with the daughter of a woman whom he dated and eventually married. Dr. John Averitt, a witness for the State and the psychologist who met with the defendant approximately five times shortly after the last alleged incident, commented at the sentencing hearing as follows:

> My opinion is that the defendant is not likely to pose a threat to the community in the sense that he might pick a child up off the street and harm them. However, I do think that there is a strong indication that he might repeat the same pattern. The pattern as it appears to me is that he associated himself with a woman with a young daughter and that as he established the relationship with the adult woman, he also established the relationship with the daughter. That pattern I think could be repeated based upon the evidence that I've seen.

Although the defendant's psychological expert testified that he did not pose a threat to the public at large and that he was an excellent candidate for treatment, he did not testify as to the possibility of a recurring pattern. This was also true of a letter from a psychological expert which was introduced by the defendant.

 Based on our *de novo* review of the record, we find that the trial court did not err in imposing consecutive sentences. There is evidence in the record which indicates that consecutive sentences are necessary in this case to protect the public from further criminal conduct by the defendant. Moreover, given the egregious nature of the defendant's offenses, the aggregate sentence

is reasonably related to the severity of the crimes involved. The trial court properly considered all the relevant factors and its findings of fact were adequately supported by the record. It is not this Court's function to substitute our judgment for that of the trial court in sentencing matters. *See State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn.Crim. App.1991). The defendant has failed to carry his burden to demonstrate that his sentence is improper, and his third issue is therefore without merit.

■ In his fourth and final issue, the defendant challenges the trial court's imposition of fines in the amount of forty-five thousand dollars ($45,000). The record reflects that the trial court imposed a twenty-five thousand dollar ($25,000) fine for count three (rape), a ten thousand dollar ($10,000) fine for count four (incest), and a ten thousand dollar ($10,000) fine for count five (incest). The defendant first contends that because the trial court ordered counts three, four and five to be served concurrently, the fines should be imposed concurrently as well, thereby totalling only twenty-five thousand dollars ($25,000) instead of forty-five thousand dollars ($45,000). He cites *State v. Bryant* for the proposition that a "sentence" is a broad term which includes a fine. *See State v. Bryant,* 805 S.W.2d 762, 765 (Tenn. 1991) (holding that the Court of Criminal Appeals has jurisdiction to review fines under the Criminal Sentencing Reform Act of 1982 because "sentence" is a broad term which encompasses a fine, probation, a term of imprisonment, or any other form of punishment imposed by the court). The defendant argues that, based on *Bryant,* his fines are necessarily part of his concurrent sentences and should therefore total only twenty-five thousand dollars ($25,000).

We begin our discussion by noting that we find no Tennessee case which has addressed this novel argument. There are, however, several cases from other jurisdictions which have expressed tacit approval for the concept of "concurrent fines." *See, e.g., State v. Brown,* 616 So.2d 792 (La.Ct.App.1993);

*Olevsky v. District of Columbia,* 548 A.2d 78 (D.C.1988); *Hernandez v. State,* 691 P.2d 287 (Alaska Ct.App.1984); *Blondes v. State,* 19 Md.App. 714, 314 A.2d 746 (1974), *rev'd on other grounds,* 273 Md. 435, 330 A.2d 169 (1975); *State v. Hollis D. Shifflett,* No. 13791, 1993 WL 372233 Montgomery County (Ohio Ct.App. filed September 22, 1993). In those cases in which concurrent fines have met with approval, invariably the trial court had expressly stated that the fines were to be concurrent or had stated a total dollar figure which clearly indicated that the fines were concurrent. The only case which we find that has specifically addressed whether a reference to "concurrent sentences" necessarily encompasses "concurrent fines" is *State v. Saperstein,* 202 N.J.Super. 478, 495 A.2d 454 (App.Div.1985). In *Saperstein,* the New Jersey Superior Court concluded that the imposition of "concurrent sentences" does not include "concurrent fines."

> The plea transcript satisfies us that the references to "concurrent" sentences contemplated custodial sentences only and that the judge's colloquy with defendant [sic] fairly and fully communicated that a $7500 fine could be imposed on each of the two counts to which the defendant pleaded guilty. Moreover, as the judge said in at [sic] the motion for reduction of sentence, if fines can be characterized as "concurrent" or "consecutive" at all, the dual $7500 fines are surely "concurrent" in that defendant [sic] is concurrently obligated to pay them both.

*Saperstein,* 495 A.2d at 456. The *Saperstein* court did not comment as to whether an explicit reference to "concurrent fines" would meet with its approval.

With this background from the decisions of other states, we now look to the law of Tennessee for further guidance. The principal statute concerning concurrent or consecutive sentencing applicable to the present case is T.C.A. § 40–35–115, which reads in pertinent part:

> **40–35–115. Multiple convictions.—(a)** If a defendant is convicted of more than

one (1) criminal offense, the court shall order *sentences* to run consecutively or concurrently as provided by the criteria in this section.

(b) The court may order *sentences* to run consecutively if the court finds by a preponderance of the evidence that:

. . . . .

(c) The finding concerning the imposition of consecutive or concurrent *sentences* is appealable by either party.

(d) *Sentences* shall be ordered to run concurrently, if the criteria noted previously in this section are not met, unless consecutive *sentences* are specifically required by statute or the Tennessee Rules of Criminal Procedure.

T.C.A. § 40–35–115 (emphasis added). Neither this statute nor any other section of the Criminal Sentencing Reform Act of 1989 defines "sentence." The Sentencing Commission Comments to T.C.A. § 40–35–115, however, implicitly provide some guidance. As we stated above, the Sentencing Commission Comments indicate that T.C.A. § 40–35–115 is essentially a codification of two cases, *Gray v. State*, 538 S.W.2d 391 (Tenn.1976), and *State v. Taylor*, 739 S.W.2d 227 (Tenn. 1987). One of the highly relevant portions of *Gray* reads as follows:

> Essentially, a consecutive *sentence* should be imposed only after a finding by the trial judge that *confinement* for such a *term* is necessary in order to protect the public from further criminal conduct by the defendant.

*Gray*, 538 S.W.2d at 393 (emphasis added). Likewise, one of the frequently quoted passages in *Taylor* reads "that the aggregate maximum of consecutive *terms* must be reasonably related to the severity of the offenses involved." *Taylor*, 739 S.W.2d at 230 (emphasis added). Thus, it appears from the language of the cases which form the basis of T.C.A. § 40–35–115 that concurrent or consecutive "sentences," as used in the multiple convictions statute, refer to terms of imprisonment, not to fines.

We hold, therefore, that the trial court's imposition of concurrent "sentences" under T.C.A. § 40–35–115 refers only to the defendant's terms of imprisonment and does not imply that fines are to be paid concurrently, or non-cumulatively, as well. Yet we decline to hold that trial courts may not impose "concurrent fines" at all. Instead, under our interpretation of the language of T.C.A. § 40–35–115, any reference to concurrent *sentences* alone does not include concurrent fines by implication.

In the present case, the trial court ordered the defendant's sentences on counts three, four and five to be served concurrently. Specifically, the trial court commented as follows:

> So we have then, I would run count three, four and five, ten [years], five [years] and five [years] concurrent with each other but consecutive to the four [years on count one] and eight [years on count two]. It would be a sentence of effective 18 years. It would be to be served in the Department of Corrections. It's just I think punishment should be imposed in this case and should be significant.

It is clear from the references to the years on each count, the effective years of confinement, and the service in the Department of Correction, that the trial court intended to impose only concurrent terms of imprisonment on counts three, four and five, not concurrent fines. Accordingly, we conclude that the total fine imposed by the trial court was forty-five thousand dollars ($45,000).

The defendant, however, next argues that regardless of whether the total fine is forty-five thousand dollars ($45,000) or twenty-five thousand dollars ($25,000), it should be reduced to five thousand dollars ($5,000) because he is now indigent. The State, on the other hand, contends that there is no reason to reduce the defendant's total fine and cites *State v. Harold Franklin Jones*, C.C.A. No. 03C01–9110–CR–330, 1992 WL 158279 Morgan County (Tenn.Crim.App. filed July 8, 1992, at Knoxville) in support of

its contention. *Jones* involved a defendant convicted of second-degree murder who received a fifteen year sentence and was fined fifty thousand dollars ($50,000). In rejecting the defendant's argument to reduce his fine because he was indigent, this Court focused heavily on his excellent work history and possible future productivity. *See Jones,* C.C.A. No. 03C01–9110–CR–330, 1992 WL 158279 Morgan County (Tenn.Crim.App. filed July 8, 1992, at Knoxville).

In the present case, the record reflects that the defendant has a doctorate degree and was a college professor at the time of the alleged offenses. Moreover, there was abundant testimony at the sentencing hearing that the defendant had worked diligently throughout his life and had progressed up through the ranks of his chosen profession with great success. Based on the proof available to the trial judge at the time of sentencing, we find that the trial court did

not err in imposing a fine of forty-five thousand dollars ($45,000). The defendant's fourth issue is therefore without merit.

For the reasons set out in the discussion above, the judgment of the trial court is reversed, and this cause is remanded for a new trial consistent with this opinion.

SUMMERS and WELLES, JJ., concur.