# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 9, 2013

## STATE OF TENNESSEE v. EVERETT RUSS

**Appeal from the Criminal Court for Shelby County**
**No. 10-07456   Chris B. Craft, Judge**

**No. W2012-00461-CCA-R3-CD  - Filed December 9, 2013**

The Defendant, Everett Russ, was convicted by a Shelby County Criminal Court jury of two counts of aggravated sexual battery, Class B felonies, and was sentenced as a Range I, violent offender to consecutive terms of nine years for each conviction. *See* T.C.A. § 39-13-504 (2010).  On appeal, he contends that (1) the State's failure to respond properly to his request for a bill of particulars should have resulted in a mistrial and (2) the trial court erred in imposing consecutive sentencing.  We affirm the Defendant's convictions, but because of inappropriate sentencing, we reverse the judgments and remand the case for entry of judgments reflecting concurrent sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Reversed in Part; Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Paul K. Guibao (on appeal); and Eran E. Julian and Mark A. Saripkin (at trial), Memphis, Tennessee, for the appellant, Everett Russ.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Gregory Thomas Carman and Carrie Shelton, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case relates to the aggravated sexual battery of the Defendant's daughter. Regarding the first count, the record reflects that the Defendant lived down the street from the victim, who lived with her mother, and that the Defendant visited the victim's house on April 11, 2010.  The victim was sleeping when the Defendant came to her bedroom, pulled her panties below her knees, rubbed her vagina on the outside with his fingers, and licked her

"private part." The Defendant stopped when the victim's brother entered the room. He saw the Defendant on his knees between the victim's legs and saw the victim only wore panties, which were pulled to her knees. When her brother asked her if the Defendant licked her, she was too scared to tell him but then admitted the Defendant licked her. He sent his uncle a text message that said, "My dad is licking my private part," but called his uncle to clarify that the Defendant was licking the victim. The uncle told the victim's brother to tell his mother what he saw, and he did. The victim's mother woke the Defendant, and they argued. The victim's brother called 9-1-1 during the argument.

Regarding the second count, the record reflects that a second incident involving the Defendant and the victim occurred when the victim was eight years old before the April 11, 2010 incident. The victim was lying on the Defendant's couch at his house and watching *Charlotte's Web* when the Defendant licked her private part. No one else was at the Defendant's house at the time.

The jury found the Defendant guilty of two counts of aggravated sexual battery. The trial court sentenced the Defendant as a Range I, violent offender to an effective eighteen years' confinement. This appeal followed.

**I**

The Defendant contends that the State's failure to provide a bill of particulars containing a more specific date for the offense in Count 2 deprived him of the ability to prepare for the trial. He argues that the lack of specificity prevented him from investigating witnesses to contradict the allegations and presenting proof of an alibi or another defense. The State responds that the issue is waived because the Defendant did not object to a deficiency in the bill of particulars before the victim's testimony and did not attempt to compel the State to provide more specific dates. The State also argues that no proof shows that it possessed information about more specific dates or that the victim was not at the Defendant's house when she said the second offense occurred.

We note that although the Defendant did not object to a deficiency in the bill of particulars or request more specific dates from the State before the victim's testimony, he had no reason to object before he heard the victim testify to a more specific date. The Defendant did not object when the victim testified to a more specific date for the second offense. However, the victim was the last witness of the day, and the Defendant objected when the trial court reconvened the next morning. The issue is not waived.

Tennessee Criminal Procedure Rule 7(c) states that on a defendant's motion, "the court may direct the district attorney general to file a bill of particulars so as to adequately

identify the offense charged." The purpose of a bill of particulars is to provide a defendant with sufficient information about the charged offense to allow the defendant to (1) prepare a defense, (2) avoid prejudicial surprise at the trial, and (3) preserve a claim of double jeopardy. *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991) (citing *State v. Hicks*, 666 S.W.2d 54, 56 (Tenn. 1984)). The State should make every effort to provide descriptive information of the offense and narrow the time frame of the indictment, even if exact dates are unavailable. *Id.* at 742.

If the State is unable to give an approximate time of the alleged offense by a descriptive reference, a conviction may be affirmed if it does not appear that the defense was hampered by the lack of specificity. *Id.* However, a conviction must be reversed if trial testimony establishes that the State possessed but withheld information that could have helped identify the nature, time, or place of the offense. *Id.* "If the State significantly deviates from the bill of particulars at trial, this potentially could be a ground for reversal, but only if a defendant can . . . demonstrate prejudice in the form of unfair surprise or inability to prepare an adequate defense." *State v. Sherman*, 266 S.W.3d 395, 409 (Tenn. 2008) (citing *Byrd*, 820 S.W.2d at 741).

Count 2 of the indictment charged the Defendant with engaging in sexual contact with the victim between October 29, 2009, and April 12, 2010. In the bill of particulars, the State provided additional information about the offense and the victim's age and noted the offense occurred in the Defendant's house and the location inside the house.

At the trial, the victim testified that the Defendant touched her once before the offense at her mother's house. She said that on the day the offense in Count 2 occurred, the Defendant went to the store and that she was lying on the Defendant's couch at his house watching *Charlotte's Web* when he returned and licked her "private part." She said that the incident occurred at night and that no one was home with her when the Defendant went to the store. She said the Defendant's mother, who lived with the Defendant, was in Atlanta that night. She thought the incident occurred on April 6 or 7, 2010. When counsel asked if the victim was guessing the date, she agreed she was. On cross-examination, the victim said she only went to the Defendant's house on weekends but went every weekend during summer break.

At a jury-out hearing on the day after the victim's testimony, counsel argued that he was not given the specific date of the offense in Count 2 to which the victim testified and did not have the opportunity to investigate where his client and the victim were that night. Counsel requested a mistrial or a jury instruction to disregard testimony about the offense in Count 2. The State responded that the victim told them about a second incident that occurred at the Defendant's house but could not be specific about a date. The prosecutor stated that

she had not heard the specific date until the victim's trial testimony and that she gave the defense all the State's information.

The trial court found that the victim guessed the date when she testified that the incident occurred on April 6 or 7, 2010, that Count 2 covered the dates given by the victim, and that the State gave the defense all the information it had. The court stated that the Defendant did not receive additional rights simply because the ten-year-old victim was more specific on the stand than she had been in previous discussions with the State. In overruling the objection, the court found that no manifest necessity existed for a mistrial.

"Although a court should make every effort to see that the prosecution supplies critical information in the bill of particulars, we have observed that in cases involving child sexual abuse, the prosecution may be unable to supply specific dates on which alleged offenses occurred." *State v. Speck*, 944 S.W.2d 598, 600 (Tenn. 1997). The victim's testimony regarding the date of the offense in Count 2 was consistent with the information provided by the State in the indictment and the bill of particulars. Although the Defendant was not informed before the trial of the specific date to which the victim testified, nothing in the record indicates that the State knew the information before the trial but withheld it from the Defendant. The Defendant was informed in the bill of particulars of the victim's allegation that between October 29, 2009, and April 12, 2010, the Defendant touched the victim on her private part at his house on his couch when she was eight years old. The Defendant knew the weekends that the victim visited his house during the dates listed in the bill of particulars. Defense counsel thoroughly cross-examined the victim regarding her recollection of the offenses. The Defendant and his mother testified on his behalf regarding his interactions with the victim. The Defendant has not established that his defense was hampered by the lack of specificity regarding the date of the second offense.

## II

The Defendant contends that the trial court erred in imposing consecutive sentencing. He argues that the expert's testimony at the sentencing hearing was insufficient to justify consecutive sentencing and that the trial court's use of the Defendant's relationship to the victim as an aggravating factor was improper. The State responds that the court followed the consecutive sentencing statute and considered the purposes and principles of sentencing and that it did not abuse its discretion in ordering consecutive sentences. We conclude that the trial court erred in imposing consecutive sentences.

At the sentencing hearing, Kim Campbell, a licensed clinical social worker and the intervention services director for the Memphis Child Advocacy Center, testified that she interviewed the victim and her mother and administered standardized tests to them. She said

-4-

the victim was experiencing clinically significant symptoms of post-traumatic stress related to the sexual abuse by her father, the Defendant. She said the victim reported fearing future abuse, fear of her father, difficulty sleeping, and hyper-vigilance. She said the victim avoided thoughts, talk, and emotions about the traumatic experience. She recommended the victim resume counseling at the Child Advocacy Center and thought the victim would benefit from an evidence-based treatment model the center used that was proven effective in treating children with post-traumatic stress symptoms. She said that children who had been sexually abused could experience long-term consequences such as anxiety, depression, and increase in "self-harming" or "sexually promiscuous" behaviors and that the victim could experience these in the future.

On cross-examination, Ms. Campbell testified that the tests were administered on January 3, 2012. She said that the victim attended four counseling sessions in June and July 2010, but that treatment was not completed because the victim quit attending the sessions. She did not know why the victim quit coming and said sometimes families just "drop out." She said that the victim returned to the Child Advocacy Center because the prosecutor referred her for the assessment around Christmas 2011 and that the agency had no contact with the victim between June or July 2010 and the beginning of 2012. She clarified that the victim's mother contacted the victim's former counselor in November 2010, requesting that the victim return to counseling but that the victim did not return.

Ms. Campbell testified that the victim's mother completed the "trauma symptom checklist for young children" about the victim and that her scores indicated post-traumatic stress disorder was "likely" for the victim. She said the victim's self-reported test scores did not indicate post-traumatic stress disorder. She said the Child Advocacy Center typically did not diagnose officially. She agreed the victim might not have post-traumatic stress disorder but said the victim reported clinically significant symptoms associated with the disorder.

Ms. Campbell testified that the victim would begin therapy on January 23, 2012, and would attend weekly for sixteen to twenty sessions. She said that it was normal for patients to finish treatment within one year but that some children who experienced multiple traumas could have longer treatment periods. She said the victim's test results showed no indication of other traumatic stress. She said that if the victim completed treatment, it was likely her current symptoms would diminish and that she would function well. She said, though, that it was "not uncommon" for children with a history of sexual abuse as young children to have new questions, concerns, and issues when they reach adolescence and that it was "not unusual" for children to return for further treatment as they age. She said there was no way to know if the victim would experience new issues.

The victim's mother completed a victim impact statement on behalf of the victim, which was received as an exhibit. She said that the victim and the victim's brother had difficulty dealing with the abuse, did not know how to react or what to expect, and were afraid the Defendant would be released from jail. She said the victim did not like to talk about the abuse and had trouble sleeping.

The trial court stated that it considered the evidence at the trial, the victim's testimony, the expert's testimony at the sentencing hearing, the presentence report, the victim's mother's letter, counsel's arguments, and the principles of sentencing and sentenced the Defendant as a Range I offender. Regarding consecutive sentencing, the court found that the Defendant was convicted of two offenses involving sexual abuse of a minor and considered the aggravating circumstances of the Defendant's relationship to the victim, the victim's "horror" knowing her father did this, and her feeling helpless. The court considered the time between the two offenses and the nature and scope of the sexual acts, which it did not consider particularly great because there was no penetration. The court determined that the victim suffered residual physical and mental damage based on the expert's testimony and report. The court found that the two sentences should be served consecutively and sentenced the Defendant to nine years for each conviction, for an effective eighteen-year sentence.

The determination of concurrent or consecutive sentences is a matter left to the discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion. *State v. Blouvet*, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). A trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

T.C.A. § 40-35-115(b)(5) (2010).

The record shows that the Defendant was convicted of "two (2) or more statutory offenses involving sexual abuse of a minor." We consider the statutory aggravating circumstances. Although the trial court noted the Defendant's being the victim's father and found residual harm based on the expert's testimony, it found that the time between the two offenses was about one week and that the nature and scope of the sexual acts was not particularly great because there was no penetration. The Defendant's relationship with the victim favors consecutive sentencing, but the remaining factors do not.

-6-

Regarding the time span of the Defendant's undetected sexual activity, this court has previously concluded that four separate sexual acts over a four year period, three or four years of undetected sexual offenses, and over one month of continued sexual intercourse were sufficient to prove the aggravating circumstance. *See State v. Doane*, 393 S.W3d 721, 739 (Tenn. 2011) (concluding that when the defendant touched the victim's vagina on four separate occasions over a two year period of time, the factor favored consecutive sentences heavily); *State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999) (concluding that the State sufficiently proved the aggravating circumstance when the defendant engaged in sexual intercourse with the victim for over one month and terminated the conduct only after being confronted by the Tennessee Bureau of Investigation); *State v. Osborne*, 251 S.W.3d 1, 28 (Tenn. Crim. App. 2007) (concluding that the trial court properly imposed consecutive sentencing when the sexual offenses went undetected for three or four years). In contrast, the Defendant committed two offenses within one week. The span of activity is not so egregious as to compel consecutive sentences. Regarding the nature and scope of the sexual acts, we agree with the trial court that the nature and scope were not particularly great.

Regarding the extent of the residual physical and mental damage to the victim, the testimony of the clinical social worker was less than certain. Ms. Campbell testified that the victim had difficulty sleeping, was hyper-vigilant, and showed clinically significant symptoms of post-traumatic stress disorder but that the disorder was not diagnosed. She stated, though, that if the victim completed treatment, it was likely her current symptoms would diminish and that she would function well. Ms. Campbell said that although long-term consequences of the abuse were possible, there was no way to know if the victim would experience new issues. The victim had not participated in ongoing treatment, and whether she needed it was not shown. The record does not support the trial court's finding of residual harm based on Ms. Campbell's testimony. *See, e.g.*, *Osborne*, 251 S.W.3d at 28 (concluding that the imposition of consecutive sentencing was proper when an expert's psychological evaluation outlined "in detail the substantial emotional and psychological impact" that defendant's conduct had on the victim and recommended that the victim continue long-term therapy); *State v. Woodcock*, 922 S.W.2d 904, 914-15 (Tenn. Crim. App. 1995) (concluding that consecutive sentencing was appropriate when a psychologist who had seen the victim in about twenty counseling sessions said the victim would most likely face continuing mental and emotional difficulties as a result of the defendant's offenses).

Not all the aggravating circumstances must be present to support the imposition of consecutive sentencing. *Doane*, 393 S.W3d at 738. Even if one circumstance weighs against it, consecutive sentencing may be appropriate if the other aggravating circumstances have been established and carry sufficient weight. *Id.* Only one circumstance, however, weighs in favor of consecutive sentencing for the Defendant. Although the Defendant was convicted of two offenses involving sexual abuse of a minor and the Defendant's relationship to the

victim supports consecutive sentencing, the trial court abused its discretion in imposing consecutive sentencing because the sexual abuse only went undetected for about one week, the nature and scope of the sexual acts were not particularly great, and the evidence concerning residual harm to the victim was less than certain.

In consideration of the foregoing and the record as a whole, we affirm the Defendant's convictions, but we reverse consecutive service of the sentences. The case is remanded to the Shelby County Criminal Court for entry of judgments reflecting concurrent sentences.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE