# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
February 3, 2015 Session Heard at Memphis[1]

## STATE OF TENNESSEE v. JONATHAN MITCHELL GRIMES

### Appeal from the Circuit Court for Gibson County
### No. H8987    Clayburn L. Peeples, Judge

---

### No. W2014-00786-CCA-R3-CD  -  Filed June 26, 2015

---

CAMILLE R. MCMULLEN, J., concurring in part and dissenting in part.

I concur with the majority with respect to its resolution of all issues in this case except issue two, which challenged the trial court's admission of evidence of other crimes, wrongs, or acts that occurred in Milan, Tennessee. In my view, the admission of this evidence amounted to plain error. For the reasons that follow, I would have reversed the conviction and remanded for a new trial.

At trial, when the State asked the victim about some incidents involving Grimes that occurred in Milan, Tennessee, defense counsel objected "to things that are outside this Court's jurisdiction." During the ensuing bench conference, the trial court asked the State if it was going to present evidence on incidents that occurred outside the jurisdiction of the court, and the State responded that the aforementioned acts, crimes, or wrongs that occurred in Milan "show[ed] motive." The court responded, "I think it's relevant." The State then continued its direct examination of the victim regarding these acts, crimes, or wrongs that occurred in Milan that were not included in the indictment or the bill of particulars. The acts in question included (1) Grimes attempting to make the victim try on old clothing and disrobe completely, (2) Grimes stroking parts of the victim's body in the shower when he was helping remove conditioner from her hair, (3) Grimes tying the victim's hands to the bedpost and pulling her pants down against her will when they were playing "cops and robbers," (4) Grimes placing his elbow on the victim's pants so that his elbow was in contact with her vagina when he was helping her with homework, (5) Grimes instructing the victim to masturbate in the shower, and (6) Grimes, the victim, and her family watching movies containing sexual content.

---

[1] Oral Argument was heard in this case on February 3, 2015, at the Cecil C. Humphreys School of Law at the University of Memphis in Memphis, Tennessee, as a part of the S.C.A.L.E.S (Supreme Court Advancing Legal Education for Students) project.

In my view, upon hearing that the State was admitting the above acts to establish Grime's motive to commit the crimes in Medina, the trial court should have held a jury-out hearing pursuant to Rule 404(b) to determine the admissibility of the aforementioned crimes, wrongs, or acts. The error was compounded by the fact that none of these acts were covered by the indictment or the bill of particulars. See State v. Hoyt, 928 S.W.2d 935, 947 (Tenn. Crim. App. 1995) (holding that the trial court was required to hold a jury-out hearing pursuant to Rule 404(b) to determine victim's assertion of sexual crimes occurring outside the indictment period), overruled on other grounds by Spicer v. State, 12 S.W.3d 438 (Tenn. 2000). I recognize that it is rare to find plain error on an evidentiary issue; however, given the extremely prejudicial nature of this evidence, the trial court should have conducted a hearing and complied with all of the conditions set out in Rule 404(b).

Moreover, while the proof in this case was sufficient to support Grimes's conviction, it was not overwhelming. This case rose and fell on the jury's assessments of Grimes's and the victim's credibility. See State v. Rodriguez, 254 S.W.3d 361, 377 (Tenn. 2008). This is important because the probative value of the acts that occurred in Milan was marginal at best and greatly outweighed by the danger of unfair prejudice. "The term 'unfair prejudice' has been defined as 'an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.'" State v. Dotson, 450 S.W.3d 1, 91 (Tenn. 2014) (quoting State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978)), cert. denied, No. 14-7868, 2015 WL 998654 (U.S. Mar. 9, 2015). "Our supreme court has long recognized 'the inherently inflammatory nature' of evidence of other sexual offenses and recognized that 'the danger of prejudice may require the sacrifice of relevant evidence in order to assure fairness to the criminal defendant.'" State v. Montgomery, 350 S.W.3d 573, 584-85 (Tenn. Crim. App. 2011) (citing State v. Burchfield, 664 S.W.2d 284, 287 (Tenn. 1984)).

Evidence of a defendant's character, such as the acts that occurred in Milan in this case, is commonly referred to as "propensity evidence" and cannot be offered for the purpose of establishing that a defendant acted in conformity with that character. "Propensity evidence may lead a jury to convict, not because they are certain the defendant is guilty of the charged crime, but because they have determined the defendant is 'a bad person who deserves punishment' whether or not the crime was proven beyond a reasonable doubt." State v. Clark, 452 S.W.3d 268, 289 (Tenn. 2014) (citing Rodriguez, 254 S.W.3d at 375; Old Chief v. United States, 519 U.S. 172, 181 (1997); United States v. Moccia, 681 F.2d 61, 63 (1st Cir. 1982); United States v. Curtin, 489 F.3d 935, 944 (9th Cir. 2007) (en banc)). The danger "particularly exists when the conduct or acts are similar to the crimes on trial." State v. Rickman, 876 S.W.2d 824, 828 (Tenn. 1994) (citing State v. Parton, 694 S.W.2d 299, 303(Tenn. 1985)).

In Rodriguez, the Tennessee Supreme Court warned about the dangers of propensity evidence, noting that "'[t]here is no subject which elicits a more passionate response than the sexual exploitation of children" because "[s]ociety abhors, and rightfully so, the victimization of the defenseless child." Rodriguez, 254 S.W.3d at 376 (quoting United States v. Villard, 700 F. Supp. 803, 809 (D.N.J. 1988)). Significantly, the court asserted that propensity evidence is especially damaging to the defendant when the outcome of the case, as in the case here, depends on the credibility of witnesses:

> The harmful effects of propensity evidence that undermines a defendant's credibility increase in close cases when the outcome depends on the jury's assessment of the witnesses' credibility. Errors in admitting evidence are less likely to be harmless in close cases. Propensity evidence affects the jury's assessment of whom to believe in a case that rises and falls upon assessments of credibility. This danger is particularly acute where the character or credibility defect is one that garners the understandable public revulsion that is directed by the public towards sexually exploitative acts towards children . . . .

Id. at 377 (internal citations omitted).

Here, the outcome of Grimes's case depended on the jury's assessment of the credibility of the child victim and Grimes. The proof of the other crimes, wrongs, or acts "more probably than not, made it easier for the jury to disbelieve [Grimes]" and "freed the jury to conclude more comfortably that [Grimes] had sexually abused [the victim]." See id. The trial court's error in admitting the proof of these incidents "undermined the fairness of the trial" and "'more probably than not' affected the jury's assessment of the credibility of the witnesses, which was the pivotal issue." See Clark, 452 S.W.3d at 290 (citing Rodriguez, 254 S.W.3d at 377). Accordingly, I would have concluded that the admission of the evidence regarding these other crimes, wrongs, or acts from Milan was not harmless because it more likely than not affected the jury's verdict at trial.

Finally, Tennessee courts have often concluded that the admission of a defendant's uncharged sexual acts was so unfairly prejudicial to the defendant that it required a new trial. See Montgomery, 350 S.W.3d at 586-87 (concluding that trial court's error in admitting uncharged sexual conduct between the defendant and the victim was not harmless because the evidence, which indicated that the defendant had abused the victim multiple times outside the period of the indictment, had a "severely prejudicial effect at trial"); State v. Woodcock, 922 S.W.2d 904, 912 (Tenn. Crim. App. 1995) (holding that admission of the defendant's uncharged sexual misconduct, which was unrelated to the offenses charged in the indictment and was "highly prejudicial," was not harmless because "the State referred to the evidence of uncharged sexual misconduct so

ostentatiously and so frequently that it overwhelmed the victim's succinct, matter-of-fact testimony about the incidents which form the basis for the counts in the indictment"); State v. Jeff Carter, No. M2009-02399-CCA-R3-CD, 2010 WL 5343212, at *15 (Tenn. Crim. App. Dec. 16, 2010) (concluding that admission of evidence regarding the defendant's unindicted sexual acts was not harmless in light of the fact that there was no physical evidence and no witness corroboration as to the charged offenses, the victim recanted her allegations four days after making them, and the victim's accusations against the defendant did not reemerge until nine years later when her mother considered filing for divorce from the defendant). Accordingly, because the record establishes the requirements for plain error relief, see State v. Bledsoe, 226 S.W.3d 349, 354 (Tenn. 2007) (quoting United States v. Olano, 507 U.S. 725, 736 (1993)), I would reverse Grimes's conviction for aggravated sexual battery and remand the case for a new trial.

_____
CAMILLE R. MCMULLEN, JUDGE