IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

SEPTEMBER 1998 SESSION

FILED

March 23, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9711-CR-00515 |
| Appellee, | * | MACON COUNTY |
| VS. | * | Hon. J. O. Bond, Judge |
| LELAND RAY REEVES, | * | (Four Counts of Statutory Rape; Rape) |
| Appellant. | * | |

For Appellant:

John E. Herbison
2016 Eighth Avenue South
Nashville, TN 37204
(on appeal)

Jerry Hunt
East Main Street
Lebanon, TN 37087
(at trial)

For Appellee:

John Knox Walkup
Attorney General & Reporter

Timothy Behan
Assistant Attorney General
Criminal Justice Division
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243-0493

John Wooten
Assistant District Attorney General
203 Greentop Street
P.O. Box 178
Hartsville, TN 37074

OPINION FILED:_____

AFFIRMED IN PART; REVERSED AND DISMISSED IN PART

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Leland Ray Reeves, was convicted of four counts of statutory rape and one count of rape. The trial court imposed sentences as follows:

| Count | Offense | Sentence |
|-------|---------|----------|
| 1 | statutory rape | one year |
| 2 | statutory rape | one year |
| 3 | rape | eight years |
| 4 | statutory rape | two years |
| 5 | statutory rape | two years |

Count five is to be served consecutively to the remaining counts for an effective term of ten years.

In this appeal of right, the defendant presents the following issues:

(I)  whether the evidence is sufficient to support the convictions;

(II)  whether venue has been established for the rape conviction;

(III)  whether the statutory rape convictions should be reversed and dismissed because the defendant was never indicted for those offenses;

(IV)  whether the statutory rape convictions are barred by the statute of limitations;

(V)  whether the trial court erred by denying the defendant's motion for a bill of particulars;

(VI)  whether the trial court erred by allowing the victim to testify on redirect about prior bad acts outside the time frame of the indictment;

(VII)  whether the trial court erred by admitting "fresh-complaint" statements made by the victim;

(VIII)  whether prosecutorial misconduct requires reversal; and

(IX)  whether the sentence is excessive.

We affirm the rape conviction; we must, however, reverse and dismiss each of the four convictions for statutory rape.

In 1991, the defendant and his wife, Kathy Gale Reeves, and her three daughters moved from Indiana to Macon County, Tennessee. The victim, E.M.,[1] who was one of Ms. Reeves' daughters and was born November 5, 1977, was in the seventh grade. At the time, the family first lived in a camper and later moved into a trailer in a wooded area owned by the defendant's mother.

In May of 1991, the defendant and the victim went to his mother's trailer to use the telephone. While there, the defendant took the victim into the bedroom, removed her clothing, and had sexual intercourse with her. Afterward, the defendant warned the victim not to tell her mother because "it was a private thing between [them]."

A second incident occurred in the late summer of 1991 just after the victim entered the eighth grade. The defendant had sexual intercourse with her in the camper. A third incident occurred in the spring of 1992, shortly after the victim had been baptized. The victim had gone for a walk. The defendant followed her into a neighbor's barn. When the defendant began to remove the victim's clothing, the victim protested because, she explained, she liked a neighbor who lived nearby and did not want to be discovered. When the defendant replied that their relationship was their "little secret," he was able to engage her in sexual intercourse.

---

[1]It is the policy of the court not to reveal the names of minors who are victims of sexual abuse.

3

A fourth incident occurred in the fall of 1992 after the victim began her ninth grade in school. The victim testified that the defendant stopped his vehicle in a field en route to a meeting with Ms. Reeves. He then removed the victim's pants and digitally penetrated the vagina of the victim. Ms. Reeves approached the vehicle and when the defendant ordered the victim into the back seat of the car, she asked for an explanation of why they were parked in the middle of the field with the car lights off. The defendant claimed they had fallen asleep. The victim hid the truth because, she explained, she was afraid of the defendant. At trial, the victim testified that she first informed her mother of the incidents only after Ms. Reeves separated from the defendant. She stated that she feared the defendant due to his abusive nature.

A fifth incident occurred in March of 1993, shortly before Ms. Reeves separated from the defendant. On that occasion, the defendant directed the victim to remove her clothes, after which she performed oral sex.

Ms. Reeves, who divorced the defendant in 1994, testified that the defendant often objected when all three of her daughters joined her on errands. She recalled that the defendant complained that he was "lonesome" without at least one of her daughters and that the defendant was alone with the victim more often than with her other two daughters. She specifically recalled the incident when she discovered the defendant and the victim parked in a field, describing them as "kind of flushed." Ms. Reeves testified that she suspected that the defendant was abusing E.M. and when she confronted her, E.M. could not look at her. Ms. Reeves separated from the defendant in the early part of 1993 and later considered a reconciliation. It was at that point that the victim informed her of the abuse.

4

On cross-examination, Ms. Reeves acknowledged that she had disagreed with the defendant over the property settlement. She testified that she and her daughters moved away from the defendant in March of 1993, that the sexual abuse allegations were made in May of 1993, and that she filed for divorce in December of that year.

Beverly Rosof, a family nurse practitioner employed by Our Kids Clinic where her primary duty was to evaluate claims of sexual abuse, determined during an examination that the vagina of the victim had been penetrated in some manner. While unable to conclusively state that the victim had been sexually abused, she did testify that the damage to the victim's hymen was significant enough to have warranted a report to the Department of Human Services.

The defendant testified that while his family utilized a telephone jack outside his mother's trailer, she would not allow anyone inside the trailer. He specifically denied ever having been alone with E.M. there. The defendant also stated that he and Ms. Reeves separated for a short time in April of 1992, reconciled, and then started attending a church where E.M. was baptized. The defendant testified that there were disagreements over financial matters during the divorce litigation, including a dispute over the family trailer. The defendant stated that he returned to Indiana in 1993 and did not learn that he faced any criminal charges until 1995.

Michael Reeves, the defendant's son, testified that he shared a residence with the defendant, Ms. Reeves, and Ms. Reeves' three daughters during the term of the marriage. He claimed that the living quarters of the family were so cramped that his father was never alone with the victim. The younger Reeves

5

contended that on one occasion the victim claimed to some students at school that she had engaged him in fellatio, an allegation he vehemently denied.

The defendant's mother, Mazell Reeves, testified that after Kathy Reeves separated from the defendant in March of 1993, she spoke on the phone with her several times. She claimed that Kathy Reeves, who had a disagreement with the defendant over financial matters related to the subsequent divorce, threatened to "get even" with the defendant. Mazell Reeves also stated that she had barred the defendant's family from entering her trailer because of a disagreement with Kathy Reeves.

I

The defendant first claims that the evidence is insufficient because there was no proof of either force or coercion, requisite elements of the single rape conviction. He also contends that the victim was an accomplice and that there was insufficient corroboration to support three of the statutory rape convictions.

We are guided in our analysis by several well-established principles. On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292 (Tenn. Crim. App. 1978). A criminal conviction can be set aside only when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This court must not reweigh nor reevaluate the evidence; nor may we substitute our

6

inferences for those drawn by the jury.  Liakas v. State, 286 S.W.2d 856 (Tenn. 1956).

At the time of the offense, rape was defined as "unlawful sexual penetration of the victim by the defendant ... [where] [f]orce or coercion is used to accomplish the act."  Tenn. Code Ann.  § 39-13-503(a)(1).  "'Force' means compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title."  Tenn. Code Ann. § 39-11-106(a)(12). "Coercion" is defined as the "threat of kidnapping, extortion, force or violence to be performed immediately or in the future or the use of parental, custodial, or official authority over a child less than fifteen (15) years of age."  Tenn. Code Ann. § 39-13-501(1).

The victim testified that as to count three, she informed the defendant that she did not want to engage in sexual intercourse but that "he did it anyway." She also testified that she was afraid of the defendant because he tended to be physically abusive.  In our view, this evidence is sufficient to support the inference that the rape was accomplished through the use of coercion.  The record supports the conclusion that the victim acquiesced to the sexual encounter because of the implicit threat of violence.

The defendant also complains that testimony of his participation in three of the statutory rapes was inadequately corroborated.[2]  Rule 601, Tenn. R. Evid., provides that every witness is "presumed competent."  Our law, however,

---

[2]He does not challenge the statutory rape which occurred while he and the victim were parked in the car in a field.  Apparently, the defendant concedes corroboration by the victim's mother, who testified that the defendant and the victim were "flushed."

requires corroboration of the testimony of an accomplice before a conviction can stand. Marshall v. State, 497 S.W.2d 761 (Tenn. Crim. App. 1973); see Rule 601, Tenn. R. Evid. That is, there must be some fact entirely independent of accomplice testimony which, taken by itself, leads to the inference that the defendant is guilty of the crime. The corroborative testimony must in some way establish the identity of the defendant. Hawkins v. State, 469 S.W.2d 515 (Tenn. Crim. App. 1971). Such evidence may be direct or circumstantial and it need not be adequate taken alone to support the conviction. Id. The requirement is met if the corroborative evidence fairly and legitimately tends to connect a defendant with the commission of the crime charged. Stanley v. State, 222 S.W.2d 384 (Tenn. 1949); Henley v. State, 489 S.W.2d 53 (Tenn. Crim. App. 1972). Slight circumstances may be sufficient to furnish the necessary corroboration. Garton v. State, 332 S.W.2d 169 (Tenn. 1960). Whether an accomplice's testimony has been sufficiently corroborated is a matter entrusted to the jury as the trier of fact. State v. Sanders, 842 S.W.2d 257 (Tenn. Crim. App. 1992).

Initially, we must agree with the trial court that the victim was by definition an accomplice in each of the four statutory rapes, an offense which implies consent on the part of the victim. See generally State v, McKnight, 900 S.W.2d 36, 50 (Tenn. Crim. App. 1994) (the court reviewed a statutory rape conviction to see if the accomplice testimony was adequately corroborated). If the minor consents to the unlawful sexual activity, she may be an accomplice. See Britt v. State, 450 S.W.2d 48, 50 (Tenn. Crim. App. 1969).[3]

The jury was instructed that the victim was an accomplice and that her

---

[3]In 1991, this common law rule was modified by statute to provide that children under the age of thirteen may not be considered an accomplice in certain sex-related offenses. See Tenn. Code Ann. § 40-17-121.

testimony would require corroboration.  Dr. Rosof testified that the vagina of the victim had been penetrated.  Although she could not determine what type of penetration had occurred, the damage to the hymen was significant enough that she would have reported the results of her examination to the Department of Human Services, even if the victim had not informed her she had been sexually abused.  Furthermore, Ms. Kathy Reeves testified that the defendant always asked that one of the daughters remain with him when she left the residence and that E.M. was left behind the most often.  Corroborative evidence need only be slight and may be circumstantial.  In our view, this testimony passes the test.

II

The defendant next complains that venue has not been established for the rape conviction.  He contends there is no proof that the barn where the rape occurred is located in Macon County.

The accused has a right to a trial by an impartial jury chosen from the county in which the crime was committed.  Tenn. Const. art. I, § 9.  See also Tenn. R. Crim. P. 18.  Thus founded in the constitution, proof of venue is necessary to establish jurisdiction.  Hopson v. State, 299 S.W.2d 11, 14 (Tenn. 1957).  Venue may be shown only by a preponderance of the evidence.  The state has the burden of proof to show that the offense was committed in the county of the indictment.  Harvey v. State, 376 S.W.2d 497, 498 (Tenn. 1964); Hopper v. State, 326 S.W.2d 448, 451 (Tenn. 1959).  Slight evidence, including circumstantial evidence, will be sufficient if the evidence is uncontradicted.  State v. Bennett, 549 S.W.2d 949 (Tenn. 1977).

Here, the victim testified that the rape occurred in a barn located on

9

her neighbor Miller's property. The defendant testified that the Miller family paid his family to work in tobacco. Checks written by the Millers indicate they lived in Macon County. That uncontested evidence, in our view, is sufficient to establish venue.

III

The defendant next argues that the four statutory rape convictions should be reversed and dismissed because he was indicted for rape yet convicted of statutory rape, which is not a lesser offense of rape. The defendant argues his situation is controlled by State v. Trusty, 919 S.W.2d 305 (Tenn. 1996). In Trusty, the defendant was charged with attempted first degree murder. The jury returned a verdict of aggravated assault. On appeal, our supreme court ruled that assault is not a lesser offense of attempted murder and thus, the defendant had been convicted of a crime for which he had never been charged. Our high court ruled that "[u]nder Tennessee law, a conviction for an unindicted offense that is not a lesser degree of the offense charged or a lesser included offense may not stand." Id. at 307. In response, the state contends that because the defendant requested the instructions on statutory rape, there was a constructive amendment to the indictment.

Initially, the trial judge has a duty to give a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). There is an obligation "to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." Tenn. Code Ann. § 40-18-110(a). "Pursuant to our statute, rule, and case law interpretations, defendants are entitled to jury instructions on all [lesser offenses], if the evidence would support a conviction for the offense." Trusty, 919 S.W.2d at 311. Such a charge "allows the jury to consider all relevant offenses in determining

the appropriate offense, if any, for conviction" and "more evenly balances the rights of the defendant and the prosecution and serves the interests of justice." Id. It is only when the record is devoid of evidence to support an inference of guilt of the lesser offense that the trial court is relieved of the responsibility to charge the lesser crime. State v. Stephenson, 878 S.W.2d 530, 549-50 (Tenn. 1994); State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990).

In Trusty, 919 S.W.2d at 310, our supreme court ruled as follows:

> Tennessee law recognizes two types of lesser offenses that may be included in the offense charged in the indictment: offenses necessarily included in the indictment and offenses that are lesser grades of the charged offense. An offense is "necessarily included in the indictment ... only if the elements of the included offense are a subset of the elements of the charged offense and only if the greater offense cannot be committed without also committing the lesser offense."

Id. Guidance was also provided as to how to determine whether an offense is a lesser grade or class of the offense charged: "[o]ne need only look to the statutes to determine whether a given offense is a lesser grade or class of the crime charged." Id. at 310. By way of example, the court noted that the legislature has divided criminal homicide "into the grades of first-degree murder, second-degree murder, voluntary manslaughter, criminally negligent homicide, and vehicular homicide." Id.

A significant question is whether statutory rape is a lesser offense of rape. It is not a lesser offense which is necessarily included in the indictment because statutory rape contains elements not included in rape; that is, the victim must be under age and there must be a four-year age difference between the victim and defendant. Whether it is a lesser grade, however, presents a more difficult determination.

11

In State v. Jones, 889 S.W.2d 225 (Tenn. Crim. App. 1994), the defendant was charged with aggravated rape; the aggravating circumstance was that the victim was under thirteen years of age. Tenn. Code Ann. § 39-13-502 (1991 repl.)[4] The defendant complained on appeal that consent would qualify as a defense to the prosecution; because he offered proof that he thought the victim was older than twelve years of age, the trial court should have charged the lesser offense of statutory rape. He alleged that mistake of fact should have been an available defense. While this court found that consent would not be a defense, we found reversible error for the failure to charge mistake of fact or provide instructions on statutory rape, which was characterized as a lesser offense of rape in that instance. Jones, 889 S.W.2d at 230. See also State v. Hallock, 875 S.W.2d 285, 294 (Tenn. Crim. App. 1993) (the defendant complained about the court's failure to charge statutory rape as a lesser offense of rape and our court ruled the evidence did not support such an instruction).

Other cases, however, suggest that statutory rape cannot be a lesser grade offense of rape. In State v. Woodcock, 922 S.W.2d 904 (Tenn. Crim. App. 1995), this court limited the holding of Jones to its particular facts, concluding that statutory rape was a lesser offense based on "the particular circumstances of [the] case." 922 S.W.2d at 913 (the defense of mistake of fact as to age combined with a charge of rape which became aggravated due to the actual age of the victim).

The opinions in Jones, Hallock , and Woodcock were all released before the supreme court filed its ruling in Trusty. In a subsequent case, State v. Ealey, 959 S.W.2d 605 (Tenn. Crim. App. 1997), our court reviewed the issue in light of Trusty

_____

[4]In 1992, our legislature created the separate offense of rape of a child. Tenn. Code Ann. § 39-13-522 (1996 Supp.).

and concluded statutory rape is neither a lesser included nor lesser grade offense of rape:

> Nor are we prepared to hold that statutory rape is a lesser grade offense of aggravated rape/rape of a child. Trusty provides that "the grades or classes of any offense are established by statute" and that "[o]ne need only look to the statutes to determine whether a given offense is a lesser grade or class of the crime charged." (emphasis in original). [T]he sex crimes do not lend themselves to such simple categorization. Although both aggravated rape/rape of a child and statutory rape are included in Part 5 of Chapter 13 of Title 39 of our Code, Part 5 also includes provisions dealing with homosexual acts, public indecency, and prostitution. Certainly, prostitution is not a lesser grade or class of rape, in spite of its inclusion in the same Part. Thus, that statutory rape is included in the same Part as the sexual assault crimes does not ipso facto make it a lesser grade or offense thereof. Moreover, the very nature of the statutory rape offense is fundamentally different from the sexual assault crimes. For instance, the sexual assault crimes all require some form of "unlawful" contact between the accused and the victim; statutory rape does not. The age of the defendant is irrelevant with respect to all of the sexual assault crimes; it is a crucial element of statutory rape. All of the sexual assault crimes contemplate the lack of effective consent by the victim; statutory rape contemplates circumstances in which the sexual relations are admittedly consensual. In short, neither Trusty nor the statutory scheme nor a consideration of the nature of statutory rape convinces us that it is a lesser grade or class of the rape of a child offense charged in this case.

Id. at 611 (citations omitted). Unpublished opinions of this court have followed Ealey in ruling statutory rape is not a lesser offense of rape. See State v. Donald Long, No. 02C01-9610-CC-00362 (Tenn. Crim. App., at Jackson, Feb. 24, 1998); State v. Michael Lynn Walton, No. 01C01-9509-CR-00290 (Tenn. Crim. App., at Nashville, Nov. 12, 1997). Based upon this precedent, we conclude that statutory rape is not a lesser grade of rape.

This court must now address the issue of whether the defense counsel's request for a charge on statutory rape qualifies as an amendment to the

13

indictment. In Ealey, the defendant, who was charged with two counts of rape, requested a jury charge on statutory rape and was convicted of that offense. 959 S.W.2d at 610. This court ruled that although statutory rape is not a lesser offense of rape, defense counsel's request for the charge on statutory rape "amounted to a consensual amendment to his presentment such that he was properly charged with statutory rape in addition to rape of a child." Id. The court noted that Tenn. R. Crim. P. 7(b) provides that "[a]n indictment, presentment or information may be amended in all cases with the consent of the defendant." Id. See also State v. Billy Joe Stokes, No. 01C01-9710-CC-00442 (Tenn. Crim. App., at Nashville, Jan. 19, 1999); State v. Robert W. Bentley, No. 02C01-9601-CR-00038 (Tenn. Crim. App., at Jackson, Oct. 17, 1996) (both cases adopting the rationale of Ealey that the request for the jury instruction amounts to an amendment to the indictment).

While statutory rape is not a lesser offense of rape, the record here tends to suggest that defense counsel sought the charge, as in Ealey. In our view, however, counsel's request would be insufficient to cure the problem in this case. Prior to Ealey, several published opinions of our court had held that the defendant may not be convicted of an offense for which he is not indicted unless he waives in writing the right to criminal accusation by the grand jury. State v. Jarnigan, 958 S.W.2d 135, 136-37 (Tenn. Crim. App. 1997); State v. Brackett, 869 S.W.2d 936, 938 (Tenn. Crim. App. 1993); State v. Morgan, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979). In our view, Ealey is inconsistent with these prior opinions and we decline to follow its reasoning, at least as far as it holds that a request for a jury instruction is sufficient to waive the constitutional right to be charged by the grand jury. Similarly, in Trusty, no mention is made of whether defense counsel requested the charge on assault or merely failed to object to the instruction. See generally Trusty, 919 S.W.2d at 307. Thus, Trusty would appear to control. See

14

also <u>State v. Michael Davenport</u>, 980 S.W.2d 407 (Tenn. Crim. App. 1998) (following the reasoning of <u>Trusty</u> and granting habeas corpus relief from a conviction for aggravated assault where the petitioner had been charged with attempted first degree murder); <u>State v. Jimmy D. Johnson</u>, No. 03C01-9602-CC-00062 (Tenn. Crim. App., at Knoxville, Oct. 16, 1997) (following the reasoning of <u>Trusty</u> and sua sponte dismissing an incest conviction where the defendant had been indicted for rape but pled guilty to incest, which is not a lesser offense of rape).

Our Constitution guarantees that "no person shall be put to answer any criminal charge but by presentment, indictment, or impeachment." Tenn. Const. art. I, § 14. "There is ... an absolute right to a criminal accusation by a grand jury." <u>Brackett</u>, 869 S.W.2d at 938. It applies to all crimes except those involving a fine of $50.00 or less. <u>Id.</u> (citing <u>Capitol News Co., Inc. v. Metropolitan Government of Nashville and Davidson Co.</u>, 562 S.W.2d 430, 432 (Tenn. 1978)). Absent either grand jury action or the written waiver of that guarantee, there can be no valid conviction. <u>Brackett</u> (citing <u>State v. Morgan</u>, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979)).

In <u>Morgan</u>, a case where the conviction was dismissed because the defendant did not waive in writing his right to be charged by a grand jury, this court explained the rule as follows:

> [T]his record affirmatively shows that the defendant did not execute the form waiver appearing on the state warrant, nor is there any other writing in this record signed by him whereby he waived his right to an indictment and trial by jury.
>
> In all (except small) criminal offenses, the rights to be proceeded against only by indictment or presentment and to a trial by jury are grounded upon provisions of Tenn. Const., art. I, §§ 6, 14. These constitutional rights may be relinquished only by a valid written waiver.

598 S.W.2d at 797 (citations omitted).

15

Here, because the defendant did not provide a written waiver of his right to have the grand jury charge statutory rape, the convictions must be set aside. Id.

In our view, the state's reliance on Rule 7, Tenn. R. Crim. P., to allow a consensual amendment is misplaced. The rule provides as follows:

> (a) General Provision.--The definition, form, use, return, endorsements, content, and procedure relating to indictments, presentments and criminal informations shall be as provided by law.
> (b) Amendments of Indictments, Presentments and Informations.--An indictment, presentment or information maybe amended in all cases with the consent of the defendant. If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches.
> (c) Bill of Particulars.--Upon motion of the defendant the court may direct the filing of a bill of particulars so as to adequately identify the offense charged.

Tenn. R. Crim. P. 7.

An amendment charging a different offense would have to be in writing. See State v. Jimmy D. Johnson, No. 03C01-9602-CC-00062 (Tenn. Crim. App., at Knoxville, Oct. 16, 1997). In Johnson, the defendant was indicted for rape. He pled guilty to incest, apparently believing incest to be a lesser offense of rape. The sole issue raised on appeal concerned sentencing. A panel of this court, however, vacated the judgment sua sponte because incest is not a lesser offense. Judge Tipton, writing for the panel, explained the underlying rationale for the rule:

> [T]he defendant's judgment of conviction must be vacated and this case remanded because he was convicted for an offense with which he was never charged. The indictment returned by the grand jury charged the defendant with rape, but he was convicted of incest. No amendment to the indictment exists in the record. ... [A]n indictment is to be in writing. See T.C.A. §

16

> 40-13-101(a). Because any amendment would be part of the indictment, it also must be in writing. In this respect, a "lawful accusation is a prerequisite to jurisdiction." Trusty, 919 S.W.2d at 309. In this case, the record on appeal does not contain a written amendment to the indictment or any mention of an amendment to the indictment. With the record completely silent as to the defendant's position on any amendment, we cannot presume that an amendment occurred. Thus, the record reflects that the defendant was convicted of an offense with which he has not been charged.

Johnson, slip op. at 5, 6.

In summary, because the record does not reflect that the defendant waived in writing his right to be charged by the grand jury and because there is no indication that an amendment occurred, the statutory rape convictions must be reversed and dismissed.

IV

The defendant also argues his convictions for statutory rape are barred by the statute of limitations. We must agree. The indictment charged five counts of rape, four of which resulted in convictions for statutory rape. While these offenses occurred between 1991 and 1993, the indictment was filed in 1996. The statute of limitations for rape, a Class B felony, is eight years. The limitations period for statutory rape, a Class E felony, is only two years. See Tenn. Code Ann. §§ 39-13-506; 40-2-101.

Generally, when a defendant is indicted for a greater offense which is not barred by the statute of limitations, he may not be convicted of a lesser offense which is barred by the limitations period. See State v. Hix, 696 S.W.2d 22, 25 (Tenn. Crim. App. 1984), overruled on unrelated issue, State v. Messamore, 937 S.W.2d 916, 919 (Tenn. 1996); Hickey v. State, 174 S.W. 269 (Tenn. 1915). A

17

defendant may waive the statute of limitations, but only if the waiver is knowing and voluntary. State v. Pearson, 858 S.W.2d 879, 887 (Tenn. 1993). A "waiver ... will not be presumed where there is no evidence in the record to indicate that the defendant was made aware of the issue." Id. In this case, there is no proof in the record to indicate the defendant knew about the statute of limitations. Nor is there any kind of express waiver. In consequence, the defendant could not have knowingly and voluntarily waived the protection of the statute of limitations. Thus, the statutory rape convictions must be reversed and dismissed. Id.

V

The defendant also complains that the trial court erred by denying his motion for a bill of particulars, requesting the disclosure of the exact time, date and place of each offense, and the time, date, and place of the victim's first complaint. The record indicates that the motion was denied. The basis for the trial court's denial does not appear in the record.

The primary purpose of a bill of particulars is to provide the defendant with information about the details of the charge, if necessary to the preparation of his defense. State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991). It also serves to avoid prejudicial surprise and to enable the defendant to preserve a plea against double jeopardy. Id. See also State v. Hicks, 666 S.W.2d 54, 56 (Tenn. 1984). A bill of particulars is not, however, a discovery device; it is limited to information a defendant needs to prepare a defense to the charges. Tenn. R. Crim. P. 7(c) (Advisory Commission Comments).

In Byrd, our supreme court recognized that in child sex-abuse cases, the victim is often not able to recall the specific date when an offense may have

18

occurred; however, the ruling required the state to disclose what information it may have concerning when the offense was committed. The supreme court warned that by "withholding relevant information, the prosecution runs the risk that an otherwise valid conviction will ultimately be set aside." Byrd, 820 S.W.2d at 742. In Hicks, the supreme court, quoting with approval 1 C. Wright, Federal Practice and Procedure, Criminal, § 129 (1982), held that the state must often "disclose the time and place of the alleged offense, and the names of the persons present when the offense took place." 666 S.W.2d at 56. The defendant, however, is not entitled to relief unless he can demonstrate that he was hampered by the lack of specificity.

In our view, the trial court should have ordered the state to respond to the bill of particulars. On two charges, the month and year were given. On the remaining three charges, a range of a few months was provided. The testimony of the victim was much more specific than the information provided in the indictments. For example, the victim testified that one of the rapes occurred shortly after her baptism. Also, another incident occurred when the defendant took the victim to his mother's trailer to use the phone. The indictments were not nearly as specific.

Nonetheless, the defendant has not demonstrated prejudice by the lack of specificity. The defendant was able to adequately cross-examine all of the state's witnesses. There is no proof in the record as to how the defense would have been conducted differently had the bill of particulars been granted. Because the defendant has not shown how the state's failure to further particularize the charges impaired his defense, no relief is warranted on this ground. Byrd, 820 S.W.2d at 741.

VI

19

The defendant next argues the trial court erred by allowing the victim to testify on redirect examination about prior bad acts occurring outside the time frame provided in the indictment. During cross-examination, defense counsel asked the victim if she had discussed her testimony with the prosecutor and challenged her recollection of the times of the various incidents of sexual contact. On redirect, the victim was allowed to testify that the abuse was ongoing. The trial court admitted the evidence so as to permit the victim to explain why she had trouble remembering the specific dates and why it was necessary to meet with the state's attorney:

> Prosecutor: And did you talk to me about those instances that you've already testified about?
>
> E.M.: Yes.
>
> Prosecutor: [E.M.], were there others as well?
>
> E.M.: Yes.
>
> Prosecutor: Can you remember them by any other way than that they happened?
>
> E.M.: No.
>
> Prosecutor: So what we talked about was the five that you could relate to?
>
> E.M.: Yes
>
> ***
>
> Prosecutor: [E.M.], can you remember the other times at all other than they happened, and how many times?
>
> E.M.: No. It happened all the time. I can't remember how many times.

Rule 404, Tenn. R. Evid., governs the admissibility of prior bad acts. Subsection (b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The

20

conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Generally, this rule is one of exclusion but there are, as stated, exceptions. See State v. Parton, 694 S.W.2d 299 (Tenn. 1985); Bunch v. State, 605 S.W.2d 227 (Tenn. 1980); Carroll v. State, 370 S.W.2d 523 (Tenn. 1963); see also State v. Rickman, 876 S.W.2d 824 (Tenn. 1994). Most authorities suggest trial courts take a "restrictive approach of 404(b) ... because 'other act' evidence carries a significant potential for unfairly influencing a jury." See Neil P. Cohen, et. al., Tennessee Law of Evidence § 404.7 at 170-71 (3d ed. 1995). That best explains the traditional posture of the courts that any testimony of prior bad acts by a defendant, when used as substantive evidence of guilt of the crime on trial, is not usually permissible. Parton, 694 S.W.2d at 302-03. The general exceptions to the rule are when the evidence is offered to prove the motive of the defendant, his identity, his intent, the absence of mistake, opportunity, or as a part of a common scheme or plan. Bunch, 605 S.W.2d at 229.

In Rickman, our supreme court spoke on the dangers of admitting into evidence prior, sex-related, bad acts in the context of a child victim. This passage, perhaps, illustrates the reason for the rule:

The general rule excluding evidence of other crimes [or acts] is based on the recognition that such

21

> evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial. Such a potential particularity exists when the conduct or acts are similar to the crimes on trial.

Rickman, 876 S.W.2d at 828, 830 (citations omitted).

By the application of these guidelines, our conclusion is that the evidence was admissible for the limited purpose of explaining why the victim met with the district attorney. It would have been preferable for the trial court to have given a limiting instruction to that effect. Because, however, the brief reference to other sexual acts was general, omitting any details of the other instances, there was minimal prejudice, if any at all. In our view, reversible error did not occur.

VI

The defendant also complains that the trial court erred by admitting "fresh-complaint" statements made by the victim to her mother and other persons. On redirect examination of the victim, the following exchange occurred:

> Prosecutor: How many people have you talked to about this other than me?
>
> E.M.: I talked to Lois Gregory. I talked to the child clinic. I talked to a detective in Indiana. I don't know.
>
> Prosecutor: All right. Let me ask you about Mrs. [Gregory], did you get into, you know, like specific times with her?
>
> E.M.: No.
>
> Prosecutor: Did you give her any of the, like the details that you did in front of the jury and with me?
>
> E.M.: No.
>
> Prosecutor: What about the people at Our Kids Clinic?
>
> E.M.: No. I just told them in general.

Prosecutor:  Right after you moved out in March of 1993, the first person you talked to about this would have been whom?

E.M.:  My mother.

Prosecutor:  Okay.  And again did you tell her specifics that happened.

E.M.:  No.

Prosecutor:  And then later on you talked to Mrs. Gregory?

E.M.:  Yes.

Prosecutor:  Okay.  Had you talked to your two sisters about what had happened to you?

E.M.:  We talked all the time.

Prosecutor:  Okay.  What I meant was before you talked to your mother?

E.M.:  Yes.

The defendant argues that this evidence does not qualify as "fresh complaint" and that the manner in which the testimony was elicited made it "impossible for the jury to discern whether what she told other people related to the five incidents she described on direct examination or whether it related to other alleged acts of abuse."

The fresh complaint doctrine allows the state to introduce evidence in its case-in-chief that the victim complained about the incident shortly after it occurred.  The historic rationale for the doctrine, which "has ancient origins," was that a "'normal' woman would report a rape soon after its occurrence" and that the failure to report the rape would tend to suggest that one had not occurred.  State v. Kendricks, 891 S.W.2d 597, 601 (Tenn. 1994).  Fresh complaint evidence qualified as an exception to the general rule that a witness's credibility could not be bolstered

23

before any defense effort to impeach the victim. Id. at 601. Historically, the fact of the complaint as well as the details were admissible in the case-in-chief. Phillips v. State, 28 Tenn. (1 Humphrey) 246, 248-49 (1848).

In Kendricks, our supreme court commented that it "would prefer to abolish the doctrine in its entirety, given its genesis in the profoundly sexist expectation that female victims ... should respond in a prescribed manner." Kendricks, 891 S.W.2d at 604. Our high court ruled, however, that because the presumption that there will be an outcry by the female victim is so entrenched in our society, a modified form of the "fresh complaint" doctrine is necessary. Id. The supreme court ruled that the fact of the complaint would remain admissible in the case-in-chief but the details of the complaint were not admissible until the "victim's credibility [had] been attacked." Id. at 603. The rule requires that while the complaint should be "timely," it need not be made immediately after the assault. "Timeliness" should be determined based upon the entirety of the facts and circumstances of the case. Id. at 605. Complaints that are the product of an investigating officer's interview are not per se inadmissible, as long as the questioning is neither "coercive nor suggestive" and is clearly the "victim's product." Id.

In State v. Livingston, our supreme court concluded that the "fresh complaint" doctrine would be inapplicable in child sex abuse cases. 907 S.W.2d 392, 395 (Tenn. 1995). Yet there was no determination of what age separated the child and the adult victim. In State v. Schaller, 975 S.W.2d 313, 320 (Tenn. Crim. App. 1997), this court ruled that "the line of demarcation for application of Livingston," is at twelve years; under that ruling, the complaint of a thirteen-year-old victim would be admissible. Id.

24

That decision would appear to permit the complaint made in this instance; because, however, there is no indication in this record as to when the complaints were made, no determination can be made as to the age of the victim. Nor can be determine from the contents of this record whether the complaints were the "victim's product" or the result of interrogation by law enforcement. Thus, while the testimony might have been admissible, the state failed to establish the underlying facts required.

Yet the error was clearly harmless in our view. The testimony was very general and, in context, constituted a minor portion of the testimony. Moreover, no details of the complaints made were entered into the record. We conclude the testimony had no impact on the verdict. That the jury returned verdicts on a lesser offense than charged in the indictment supports that determination. This issue is without merit.

VIII

The defendant also argues that prosecutorial misconduct requires reversal. He complains about the following portions of the state's closing argument:

> You keep in mind that his word, the word Mr. Hunt chooses is theory. It has nothing to do with the facts in this case. What it is, is what criminal defense lawyers do all the time, they throw out some facts ... smoke screens is what they throw out. That's to divert your attention away from the ugly facts that point directly to [the defendant]. ...[T]he defendant, ... let's talk about all these diversions for his sexual perversions. For his sexual deviations.

Generally speaking, closing argument "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978). Our

supreme court has ruled that argument that "that defense counsel was 'trying to throw sand in the eyes of the jury' and 'blowing smoke in the face of the jury'" is improper argument. State v. West, 767 S.W.2d 387, 395 (Tenn. 1989). To merit a new trial, however, the argument must be so inflammatory or improper as to affect the verdict. Harrington v. State, 385 S.W.2d 758 (Tenn. 1965). In Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976), this court articulated the factors to be considered in making that determination:

> (1) the conduct complained of viewed in the context and the light of the facts and circumstances of the case;
>
> (2) the curative measures undertaken by the court and the prosecution;
>
> (3) the intent of the prosecutor in making the improper statements;
>
> (4) the cumulative effect of the improper conduct and any other errors in the record; and
>
> (5) the relative strength or weakness of the case.

When measured by these standards, it is apparent that any improprieties in this argument did not warrant a new trial. Although the challenged portion of the state's argument was improper, the remainder of the argument falls within permissible guidelines. The defendant made no contemporaneous objection and the record does not suggest an improper motive on the part of the state.

IX

The defendant's final complaint is that the trial court erred by enhancing the sentence on two of the statutory rape convictions and by requiring another of the sentences to be served consecutively. Although we have reversed and dismissed each of the four statutory rape convictions, we will nonetheless address the sentence received by the defendant.

26

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The trial court imposed sentence as follows:

Look at the aggravating factors. There's not a whole lot of aggravating factors here, doesn't look like. I think he did use his position and forced the child to do what he did with her. I think that's one of the aggravating factors. As far as some of the others, they're a part of the others, two and three applied that part of the offense itself, so, I mean, he didn't use a weapon or anything. He's got five charges he's been convicted of, the most serious being the rape case, eight to twelve years. The Court sentences eight years on the bottom, the range there is where it should be. The range on the next offense committed was one year, and bottom. The next one would be one year, he would carry some time on. The third one would be two years, top range on that one, and two years top range, on the others.

27

[R]ape runs eight years, so it's running concurrent with three of the statutory rapes, going to run one consecutive, that's a fair sentence, giving him an effective sentence of ten years.

Although the trial court did not refer to the precise language of the statute, it is apparent he enhanced the statutory rape sentences based on aggravating circumstance Tenn. Code Ann. § 40-35-114(15), that the defendant abused a position of private trust. The record clearly supports application of this enhancement factor. As the victim's step-father, the defendant abused his relationship to commit the crime. Two-year sentences on two of the statutory rape convictions are entirely appropriate.

We now turn to the appropriateness of ordering consecutive sentences. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution: "[C]onsecutive sentences should not routinely be imposed ... and ... the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the

28

following criteria exist:

> (1)  The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2)  The defendant is an offender whose record of criminal activity is extensive;
>
> (3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6)  The defendant is sentenced for an offense committed while on probation;
>
> (7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present:  (a) that the crimes involved aggravating circumstances;  (b) that consecutive sentences are a necessary means to protect the public from the defendant;  and (c) that the term reasonably relates to the severity of the offenses.

29

In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[ ] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." Wilkerson, 905 S.W.2d at 938. The record must show that the sentencing principles and all relevant facts and circumstances were considered before the presumption of correctness applies.

The trial court did not state the basis for imposing consecutive sentences. The only proof at the sentencing hearing was the testimony of Bill Hyden, a probation officer, who confirmed the defendant's failure to meet child support obligations. It is possible that consecutive sentences might have been warranted based on statutory factor number five, that the defendant was convicted of two or more sexual offenses involving a minor. Yet, there is no proof, as required by law, of "the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." Tenn. Code Ann. § 40-35-115(5). Based on the content of the record, consecutive sentences would have been inappropriate.

For the reasons previously stated, the convictions for statutory rape

are reversed and dismissed.  The conviction and sentence for rape are affirmed.

_____

Gary R. Wade, Presiding Judge

CONCUR:


_____

Thomas T. Woodall, Judge


_____

James Curwood Witt, Jr., Judge