IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2007

**STATE OF TENNESSEE v. TONY HOOVER**

**Direct Appeal from the Criminal Court for Shelby County
Nos. 05-04655, 05-04656    W. Mark Ward, Judge**

_____

**No. W2007-00326-CCA-R3-CD  - Filed January 7, 2008**

_____

The Defendant, Tony Hoover, pled guilty to two counts of rape and two counts of incest for actions against two of his daughters.  The trial court sentenced him to four years on each incest count, and ten and one-half years on each rape count.  The incest sentences were run concurrently with the rape convictions, but the rape sentences were run consecutively, for an effective sentence of twenty-one years.  The Defendant challenges the trial court's decision to run his sentences consecutively.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and DAVID G. HAYES, J., joined.

Michelle Lynn (at trial) and Garland Ergüden (on appeal), Memphis, Tennessee, for the Appellant, Tony Hoover.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; Scot Bearup, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I.  Facts**

In indictment number 05-04655, the Defendant was charged with one count of incest and one count of rape of his daughter, A.M.[1]  In indictment number 05-04656, the Defendant was charged with one count of incest and one count of rape of his daughter, J.M.  The Defendant pled guilty to these charges with the court to set the sentence.

_____

[1]As is the custom of this Court, we will use initials to refer to the two minor victims in this case.

At the sentencing hearing, the following evidence was presented: A.M., sixteen at the time of the hearing, testified she was fourteen when she was raped by her father. She lived with her mother at that time and visited her father for Thanksgiving, along with her two sisters and her brother. A.M. testified that she was sitting in a back room watching television when the Defendant came in and repeatedly asked her to have sex with him. Eventually, because A.M. grew tired of his asking, she had sex with the Defendant. A.M. stated that this was not the first time she had sex with the Defendant and that all the previous instances also occurred at his residence. A.M. testified that the previous instances involved digital penetration "a lot" and oral sex "several" times. A.M. also described a card game where she, her half-sister, T.H., and the Defendant all took off their clothes throughout the game. By the end, they were all naked. All of these acts occurred over a period of "five or six" years.

A.M. testified that she did not tell anyone about these acts because she was scared of the Defendant. In describing how this affected her, A.M. stated that she no longer trusted men and did not like to be around men or talk with them.

J.M., fifteen at the time of the hearing, testified that she was thirteen at the time of these acts. The Defendant, her father, touched her vagina, chest, and buttocks when she visited him in Memphis. J.M. stated that he digitally penetrated her vagina "many times," he performed oral sex on her, and he also engaged her in penile intercourse more than three times. J.M. testified that the Defendant used a condom "[a] few times."

Angela Matthews, the victims' mother, testified that she allowed her two oldest children, A.M. and J.M., to visit their father, the Defendant, in Memphis. Prior to 2004, she had no worries about the Defendant and their children. She described her relationship with the Defendant as "really good" and said he was one of her best friends. After Thanksgiving 2004, her daughters came to her and described their problems with the Defendant. Matthews stated that, prior to learning of the situation, she witnessed J.M.'s behavior change drastically: J.M. had been outgoing and no longer was, and her grades and behavior both declined. A.M. asked not to go to Memphis anymore, but she would not explain why.

Since Matthews discovered what was happening, J.M. has "gotten better." Although she has attempted suicide three times, counseling has allowed her to move past her issues. A.M.'s attitude has also improved, but she still has nightmares that involve seeing the Defendant's face. Matthews stated that both victims have attended counseling, which has improved them overall. On cross-examination, Matthews stated that the last time they went to counseling was a year prior.

Josephine Anderson, the mother of the Defendant's daughter, T.H., who was fifteen at the time of these crimes, testified that T.H. was frequently at the Defendant's house, often when A.M. and J.M. were also there. One time, T.H. arrived home with a "hicky," which she attributed to the Defendant. Anderson, however, thought nothing of it. Some time later, she received a phone call from Matthews, after which she, her husband, and her sister-in-law discussed the situation with T.H.

2

T.H. broke down and told Anderson "everything," so Anderson called the police. Anderson said that, since the incidents, T.H.'s grades have declined, and she has become rebellious. Anderson stated that she no longer trusts most men around her daughter.

T.H. testified that she visited her father, the Defendant, when her sisters, A.M. and J.M., were at his house. She recalled a card game where players who lost were required to remove an article of clothing. She, her two sisters, and the Defendant all played; they all ultimately removed all their clothes. After the card game, the Defendant asked T.H. to touch his penis, which she did. T.H. stated that the Defendant touched her vagina more than once with his fingers, and once with his mouth. Additionally, the Defendant touched her breasts and buttocks, and he gave her a "hicky." She stated she did not initially tell her mother because she was scared. Ultimately, she told her mother, step-father, and aunt after Matthews called her mother and explained the situation. On cross-examination, T.H. stated that both her sisters were in the room when the Defendant touched her after the card game.

After hearing argument, the trial court determined the Defendant was a Range I offender. The court found the Defendant had a previous history of criminal convictions, a D.U.I., but it placed little weight on that factor. The court, however, put some weight on the fact that T.H. alleged additional criminal conduct that was unrefuted. The court also found the offenses were committed to gratify the Defendant's desire for pleasure or excitement. As to mitigating factors, the court placed some weight on the fact that the Defendant's conduct neither caused nor threatened serious bodily injury, and great weight on the Defendant's guilty plea. The court also gave mitigating weight to the Defendant's lack of a significant criminal record and his employment. Taking these considerations into account, the court sentenced the Defendant to ten and one-half years on each rape conviction and four years on each incest conviction.

Under Tennessee Code Annotated section 40-35-115(b), the trial court ordered the Defendant's sentences to run consecutively. First, the court found the father/daughter relationship weighed heavily in favor of consecutive sentencing. Second, the time span – five to six years – also weighed in favor of consecutive sentencing. Third, the nature of the acts – penile, oral, and digital penetration – weighed in favor of consecutive sentencing. Finally, the court determined the final factor – residual physical or mental damage – was close because there was no expert testimony on the issue. However, the totality of the circumstances justified consecutive sentencing. The court also found consecutive sentencing was necessary to protect society, and it was reasonably related to the offenses. The court ordered the incest sentences to run concurrently with the rape sentences, and the rape sentences to run consecutively, for a twenty-one year sentence.

## II. Analysis

On appeal, the Defendant only challenges the trial court's determination that the rape sentences should be run consecutively. When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-

35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, T.C.A. § 40-35-103 (2006), we may not disturb the sentence even if a different result were preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing, (4) the arguments of counsel relative to sentencing alternatives, (5) the nature and characteristics of the offense, (6) any mitigating or enhancement factors, (7) any statements made by the defendant on his or her own behalf and (8) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The trial court ordered the sentences to run consecutively under Tennessee Code Annotated section 40-30-115(b)(5). That statute allows consecutive sentencing if the court finds by a preponderance of the evidence, among other things, the following:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

The Defendant was convicted of two counts of rape of his minor daughters. One daughter explained that the acts occurred over a number of years, "five or six." The Defendant's acts in this case included a number of instances of penile sexual penetration, oral sex, and digital penetration. Based on these three factors, and general sentencing principles, the trial court determined the sentences should be run consecutively.

We note that the trial court determined the final factor was neutral because no testimony was presented to establish the damage was "residual." The wording of the statute is somewhat unclear on this issue. The statute reads "residual, physical or mental damage." T.C.A. § 40-35-115(b)(5) (2007). The logical wording of the statute would indicate that the mental or physical damage must be residual to be considered, as the trial court found. *See State v. Woodcock*, 922 S.W.2d 904, 914-15 (Tenn. Crim. App. 1995) (affirming consecutive sentencing after showing of residual mental damage by psychologist); *State v. Anderson*, 880 S.W.2d 720, 727 (Tenn. Crim. App. 1994) ("the victim would suffer residual effects of the abuse."). If the legislature intended to include both

residual and non-residual damage, it seems as though it would have omitted "residual" or stated "residual or non-residual damage." However, the comma after "residual" indicates the "residual" portion is independent of "physical" and "mental" damage. *See State v. Taylor*, 739 S.W.2d 227, 230 (Tenn. 1987) ("There was also evidence that the child had suffered emotional damage."). In other words, if the legislature had intended to make "residual" modify both "physical" and "mental," there would be no need for the comma after "residual." Thus the sentence would read: "to the extent of the residual physical and mental damage." Ultimately, our decision in this case does not rest on a determination of this issue as we agree with the trial court's final decision.

In our view, the trial court properly considered every relevant issue and made clear findings of fact and conclusions of law. We agree that the Defendant should receive consecutive sentences for the reasons stated by the trial court. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Upon a thorough review of the record and applicable law, we affirm the judgments of the trial court sentencing the Defendant to an effective twenty-one years in prison.

_____
ROBERT W. WEDEMEYER, JUDGE